ALBANY,
Oct. 1834.

Delacroix
v.
Bulkley.

</div>

Judgment affirmed.

---

### DELACROIX *vs.* BULKLEY.

A *sealed executory contract* cannot be *released* or *rescinded* by a *parol agreement ;* thus, where a *landlord* covenanted to make certain alterations and improvements in a *store,* and by the same instrument let the store, so to be altered to a tenant for a term of years, at a stipulated rent ; and by reason of the decay of the building, the landlord was forced to *change his plan,* and accordingly took down the old building and erected a new one, in which he fitted up a store for the tenant ; to which change of plan the tenant *assented,* but such *assent was by parol ;* IT WAS HELD, in an action by the tenant against the landord for the non-performance of the original covenants, that the evidence of assent was incompetent and inadmissible.

*After a breach* of a *sealed contract,* a right of action may be waived or released by a new *parol contract* relative to the same subject matter, or by any valid parol executed contract.

ERROR from the superior court of the city of New York. Bulkley sued Delacroix, and declared against him in *covenant* on an instrument in writing, bearing date 16th February, 1825, whereby (after reciting that it had been agreed between Delacroix and Bulkley, that Delacroix should alter and improve certain premises known as No. 112, Broadway, in the city of New York, in the manner afterwards particularly described in the instrument, and that Delacroix should lease to Bulkley the first story of that part of the premises which, after the alteration and improvement, would be south of the hall, in the instrument afterwards described, for and during the term afterwards mentioned, *at the rent of* $865 *per annum,* and that Bulkley had agreed to take such lease when the premises should be so altered and improved) Delacroix *covenanted* and *agreed* that he would, on or before the 15th day of

May then next, alter and improve a certain *two story house* situate in Broadway, known as No. 112, containing in front on Broadway about 37½ feet, by making a hall not more than 7 feet wide in the clear, to run through the middle of the house from front to rear, by raising the front of the house so that it should present in front the appearance of a full *three story house*, by making the first story of the south part of the house, so to be divided, into a store of not less than 15 feet front and rear, and to extend from the front to the rear of the house, &c. (particularly describing the comtemplated alterations and improvements,) and by lowering the cellar under the front half of the store as far as practicable without injuring the foundation of the house, flooring the same, and making suitable steps to descend into it from the street. By the same instrument, Delacroix *demised* to Bulkley *all the said store so to be built and improved, together with the cellar*, to extend back about 22 feet, with the privilege of the hall and yard for egress and regress. *Habendum* the premises to Bulkley from the day that the store and cellar should be altered and improved in the manner before mentioned, until the 1st May, 1832, *reserving* an annual rent of $865, in quarter yearly payments, which Bulkley on his part covenanted and agreed to pay. After setting forth the instrument, the plaintiff alleged, by way of breach, that the defendant did not, on or before the 15th May, 1825, or at any time afterwards, *alter and improve* the said two story house and premises in the manner mentioned in the indenture, and that he did not *demise* to him, the plaintiff, *the store, cellar and privilege* mentioned and described in the indenture for the *term* therein specified, and so, &c. The defendant pleaded *non est factum*, and subjoined a notice of special matter to be given in evidence, &c. On the trial of the cause, the plaintiff produced and proved the instrument declared on, and proved that if the store and cellar had been fitted up in the manner specified in the instrument, the *rent* thereof would have been worth at least $1400 per annum. The plaintiff having rested, the defendant *offered to prove* (under the notice attached to his plea) that after the execution of the instrument declared on, and when he, the defendant, was about to make the alteration therein

mentioned, it was found impossible to do so with safety, owing to the age and condition of the building, and that this was known and admitted at the time by the plaintiff; that he, the defendant, was consequently obliged to change his plan, and thereupon caused the old building to be entirely taken down, and a new building, now called the *National Hotel*, to be erected on the premises; that the plaintiff stood by and advised the *change*, or assented thereto; that the plaintiff spoke of the store south of the entry in the new building, as the store which he was to have, when finished, in lieu of that which was to have been fitted up under the indenture or agreement, if the plan therein mentioned had been carried into effect, and gave directions or made suggestions, while the building was going up, as to the manner of fitting up the said store; that when the new building was finished, in November, 1826, he, the defendant, offered to give the plaintiff a lease of the store south of the entry for *seven years*, at a *rent of* $700 *per annum*, and that the plaintiff refused to take such lease. The evidence thus offered was objected to as incompetent, and excluded by Mr. Justice *Oakley*, who presided at the trial. The jury found a verdict for the plaintiff, with $3,600 damages, on which judgment was rendered. The defendant having excepted to the decision of the judge excluding the testimony offered, sued out a writ of error.

*A. D. Russell*, for plaintiff in error.

*C. C. King & S. Sherwood*, for defendant in error.

*By the Court*, SAVAGE, Ch. J. The only question arising upon the bill of exceptions in this case is, whether the evidence offered shall have been received? The law has been understood to be well settled, that a *covenant under seal*, not broken, cannot be discharged by a *parol agreement*. 1 *Taunt.* 430. 10 *Wendell*, 184. 11 *id.* 30. It has been supposed by counsel that some cases in this court contain a contrary doctrine. The case of *Fleming* v. *Gilbert*, 3 *Johns. R.* 530, as stated in the opinion of the court, was upon a bond, the con-

dition of which substantially was, that the defendant should by a certain day procure and deliver to the plaintiff a certain bond and mortgage, and discharged the same from the record. The defendant did procure the bond and mortgage and offered them to the plaintiff, and offered to do whatever he required further to discharge the mortgage of record; but the plaintiff, not knowing what was necessary, entered into another agreement respecting further proceedings, by reason of which the defendant was prevented from taking further measures to discharge the mortgage of record. This case is put upon the principle, that he who *prevents* a thing being done, shall not avail himself of the non-performance he has occasioned. *Lattimore* v. *Harsen*, 14 *Johns. R.* 330, recognizes the doctrine that an agreement under seal, to perform certain work, may be discharged by a subsequent parol agreement to perform the same work on different terms. This was after an avowal on the part of the plaintiffs that they would not fulfil their written contract. The court say the plaintiffs had a right to forfeit the penalty, and after notice of such intention, the defendant entered into the new arrangement, and there was a sufficient consideration for the new promise. *Hasbrouck* v. *Tappen*, 15 *Johns. R.* 200, was an action of covenant for not conveying land, according to agreement, by a particular day, free from encumbrances. The land was not conveyed, and the defendant attempted to excute himself, on the ground that the plaintiff had said he would take no advantage if the conveyance was not made at the precise day. When the defendant afterwards offered to execute a deed, the plaintiff declined receiving it—not on the ground that the *time* had elapsed, but because the property was encumbered. The court held that the plaintiff had not waived his right of action by the indulgence he had granted. It was said that this was not a new agreement, particularly as such agreement by parol would be void by the statute of frauds. A void agreement can never be considered an alteration of a valid contract. *Dearborn* v. *Cross & Thrasher*, 7 *Cowen*, 48, decides that a bond may be discharged by the parol agreement and acts of the parties. The plaintiff gave the defendant Cross a bond, conditioned to convey certain premises, and Cross went into

posssession. Subsequently the parties by parol agreed to re-
scind the agreement to purchase, and Cross gave up the pos-
session to the plaintiff, who sold to another person. The
court said, that under such a state of facts, Dearborn could
not recover from Cross the consideration of the purchase
which had been rescinded ; but it is there expressly said that
it is not *intended to decide* that a parol agreement to rescind
a sealed contract is binding as an executory agreement.

The extent to which these cases have gone is this: that af-
ter a breach of a sealed contract, the parties to it may discharge
any liability upon it by entering into a new agreement in rela-
tion to the same subject matter, which new agreement is a val-
id contract, founded upon sufficient consideration. In *Fleming*
v. *Gilbert*, it is assumed that the plaintiff *prevented* the de-
fendant from performing his contract, and therefore should
not take advantage of his failure. Here it *is* not pretended
that any thing was done or said by the plaintiff to prevent
the defendant from a literal compliance with his contract.
To bring this case within the principal of *Lattimore* v. *Harsen*,
there should have been not only an avowed refusal to per-
form, but a subsequent executed substituted agreement : and
so, also, as to the case of *Dearborn* v. *Cross & Thrasher*. Had
the plaintiff in this case not only waived the sealed contract
by parol, but had accepted and taken possession of the new
store, in lieu of that which he was to have had by his sealed
contract, the cases would have been more nearly parallel.
It will be seen, then, that there has been no innovation upon
established principles, and that the law remains as it has al-
ways existed, that a *sealed executory contract* cannot be releas-
ed or rescinded by a *parol executory contract* ; but that, *after
breach* of a sealed contract, a right of action may be waived
or released by a new parol contract in relation to the same
subject matter, or by any valid parol executed contract. The
offer in this case was not that any new agreement had been
entered into between these parties, either executed or execu-
tory, but that the plaintiff assented to the taking down the
old building and the erection of the National Hotel ; that he
stood by and advised this change, or assented to the same,
and spoke of the store in the new building as the one which

he was to have, and made suggestions as to the manner of fitting it up. So far as this evidence has any bearing upon any contract, it can only be executory; but it proves no contract at all—it only proves a parol assent, without any consideration, to the defendant's departure from his sealed contract. This was properly excluded. The court below decided correctly, and their judgment must be affirmed.

<div align="right">Judgment affirmed.</div>