## SUPREME COURT.

LYNCH Respondent agt. McBETH Appellant.

The Supreme Court exercises, on an appeal from a County Court in a cause originating in a Justice's Court, merely an appellate jurisdiction, and can re- view only decisions *actually made* by the County Court.

Where the appeal is founded upon some irregularity or error not contained in the proceedings before the justice, such error must appear by the appellant's affidavit (*Code of* 1851, § 353). This statement and the respondent's counter affidavit are in such cases equivalent to an *assignment of errors of fact* (Ad- sit agt. Wilson, *ante p.* 64, 68).

The declaration of a party can not be made *evidence* in his own favor, on the ground that they were made in a conversation, part of which is called out on a cross-examination by the other party.

Parol evidence is inadmissible to vary the terms of an agreement, under seal, until it is shown that the sealed contract had been previously broken, re- scinded, abandoned or had expired.

Where the return of the justice does not contain any legal evidence to support his judgment, the judgment should be reversed.

*Chautauque General Term, September* 1852. *Present,* TAG-GART, *P. J.,* MARVIN, HOYT and MULLETT, *Justices. Appeal from a judgment of the Erie County Court, affirming a judgment of a Justice's Court, on appeal, taken in* 1851. This ac-tion was commenced December 5th, 1850, and was tried by the justice without a jury, January 2, 1851. The plaintiff, in his complaint stated in substance, that between the 12th of March and the 1st of December 1850, he performed divers services, work and labor, for the defendant, and furnished lumber and materials, for which the defendant was indebted to him in the sum of $100, and demanded judgment for that amount. The defendant by his answer denied each and every allegation in the complaint, and stated further that he and the plaintiff, about the 1st of August 1850, entered into a contract under seal, whereby the plaintiff agreed to build and finish a house in the city of Buffalo, for the defendant. That the plaintiff never fulfilled the contract accord-ing to its conditions, but wholly failed so to do, to the defend-ant's damage $100; and the defendant, in his answer, further stated that he would prove a set off to any claim that the plaint-iff might prove, in promissory notes and receipts against the

plaintiff, to the amount of $100. The justice's return states in substance, that upon the trial the plaintiff's counsel introduced a witness who gave evidence tending to prove the doing of work by the plaintiff, and his hands, on a house, on Heacock street, in the city of Buffalo, and described the work, and said *he* worked on the house, for the plaintiff, some time; that while he was at work there, he saw the defendant there talking with the plaintiff. On his cross-examination by the defendant, the witness said he did not know the defendant then, but after he had gone, the plaintiff told him he was the defendant (Mr. McBeth), and said he could not get money of him to go on with the work. The plaintiff's counsel then asked the witness why the plaintiff did not go on with the work? The defendant's counsel objected to this evidence on the ground of incompetency, as the justice's return states, but the justice decided that the "plaintiff had a right to call for the whole conversation which the defendant had opened," to which decision the defendant objected; but the question was put to the witness, who answered that the plaintiff told him the defendant would not pay him as fast as he got along with the work, and that *that* was the reason why he would not go any further. The plaintiff's counsel, after introducing several other witnesses who gave evidence tending to prove the work done, and caused to be done, by the plaintiff, on the house, and the value of the work, and of the materials furnished by the plaintiff, *rested his case.* The defendant's counsel then produced and proved a sealed instrument executed by the plaintiff, dated August 1st, 1850, which commenced thus: "Specifications for a house to be finished for J. McBeth, on Heacock street, in the city of Buffalo." Then followed a particular description of the house, the manner in which it was to be finished, and the materials of which it was to be made, and concluded as follows: "The above to be completed, ready to occupy, on or before the first day of November next, for the sum of four hundred dollars; forty dollars of which are to be applied on C. B. Lynch's note, and the remainder to be paid as soon as the job is finished. I hereby bind myself to John McBeth in the sum of five hundred dollars to fulfil the above contract. Dated Wales Center, August 1st, 1850." Signed " C. B. Lynch, and sealed.

Lynch agt. McBeth.

The plaintiff was then called and sworn as a witness, on the part of the defendant, and gave some evidence respecting the identity of the plan of the house which was shown to him. The defendant then gave other evidence tending to show that the house was not completed on the first day of December 1851; that he employed other men to finish it, and the expense of such finishing. The defendant then recalled the plaintiff, who testified that he had never done any other work for the defendant in Buffalo, before this, or made any other contract with the defendant in Buffalo. He also said that he did not enter into the work on the house, on the terms of the written contract exactly. It was not according to that contract. The plaintiff then gave some evidence tending to prove that while he was doing the work on the house, he called on the defendant for money to enable him to go on with the work, and informed the defendant that he must have money before he could proceed with the work he was doing for him; and that the work would have to stay until he furnished the means according to agreement, and that these calls upon the defendant were repeated several times.

The plaintiff was then produced as a witness in his own behalf, and his counsel proposed to prove by him a further or other agreement than the sealed one, which had been produced, under which he did the work on the house. To this the defendant's counsel objected, on the ground that parol evidence was inadmissible to vary the terms of another agreement under seal. But the court decided that the plaintiff might show another agreement as proposed. The plaintiff then testified in substance, that he employed men to put the foundation and frame in order; and went on to do the work on condition that he was to have money from time to time, as the work progressed along, for the purpose of doing the building, from the defendant; that the reason why he did not go on with the work was the want of money from the defendant to do it. That he frequently called on the defendant for money and told him he would not do any more unless he had money to do it with. That on such answer the defendant talked about getting money. That on the 12th of August the defendant let him have a $100 and took his note for it. That at another time the defendant left him $25, but had paid him no more since.

That the reason why he did not go on and finish the house was that the defendant failed to furnish means for that purpose, as he had agreed to do, after the written agreement was signed. That the defendant had told him since the written contract was signed, if he would go on, he, the defendant, would furnish money as the work went on. The plaintiff gave some other testimony in reference to the work which he had done, its value &c., and the giving of the $100 note on the 12th of August 1850, which he admitted was given for money advanced by the defendant, pursuant to the parol understanding which he had mentioned, though he said he wanted to give a receipt instead of a note, if he was not mistaken. The note was produced and was as follows: "$100. On or before the first day of November next, for value received, I promise to pay John McBeth or bearer, one hundred dollars with interest. August 12th, 1850." Signed, " Cyrenus B. Lynch."

The defendant proved by the man who delivered the $100 to the plaintiff for the defendant, and took the note, that the note was read to the plaintiff before he signed it. That the plaintiff said " giving a note he supposed was the understanding;" proposed to give a receipt, but signed the note, and said he should want some more money by the close of the following week. That the witness then told the plaintiff that the defendant said he would let him have money as any other neighbor. Upon the above evidence and proceedings the cause was submitted to the justice, who gave judgment for the plaintiff for $86·66 damages and the costs. This judgment was, on appeal, sustained by the County Court, whose judgment is now brought here for review.

A. SAWIN, *for Appellant.*

H. SEYMOUR JR., *for Respondent.*

By the Court, MULLETT, Justice.—This is an appeal from a judgment of a County Court, rendered in December 1851, affirming a judgment of a Justice's Court. It is clear that in such cases, this court exercises merely an appellate jurisdiction, and can review only the decisions of the County Courts, actually made upon matters brought and litigated, or claimed, before those courts (Dorr agt. Birge and Wells, 5 *How. Pr. R.* 323, and the

Lynch agt. McBeth.

cases there referred to). It would, therefore, seem to be an important preliminary step in the investigation of such cases, to ascertain what those matters were. By the statute providing for appeals from courts of justices of the peace, to County Courts, the appellant, to take an appeal, is required to make or cause to be made, an affidavit stating the substance of the testimony and proceedings before the court below, *and the grounds upon which the appeal* is founded (*Code of* 1851, § 353). Under the Code of 1848, which was in this respect the same as the present Code, the Oneida County Court (1 *Code Rep.* 103), and the Superior Court of the city of New York (2 *Sand. S. C. R.* 632, *and note*), decided that unless this requirement was complied with, by a particular specification of the grounds upon which the appeal was founded, the appeal was invalid and should be dismissed. This construction is in accordance with the letter of the statute, and if adhered to would add much to the regularity and certainty of proceedings on appeal in the County Courts, and save this court some labor and difficulty in reviewing the decisions of the County Courts in such cases. But a similar requirement, in affidavits for the removal of causes from justices' courts to the common pleas, by certiorari, and expressed in nearly the same words (2 *R. S.* 255, § 171), was considered by the Supreme Court sufficiently complied with by an affidavit setting forth the substance of the testimony and proceedings before the justice, containing statements of the errors alleged to have been committed by him, without the addition of a more particular statement of the grounds upon which the allegations of error are founded (6 *Wend.* 544; 8 *id.* 509; 18 *id.* 550). This was the construction put upon the Revised Statute immediately after its adoption, and adhered to until the statute was superseded by the Code, and it is hardly to be supposed that the commissioners of the Code, or the legislarure, desired or expected a different construction from the use of the same words; nor is the necessity for a particular and formal statement of the grounds upon which the justice's judgment is sought to be reversed, so far as they are included in the proceeding before the justice, increased by changing the mode of review from a certiorari, to an appeal. In bctn cases the cause is reviewed, in respect to the proceedings pefore the justice as it

appears on his return.    By the former practice, the justice was
required, in his return, truly and fully to answer all the facts set
forth in the affidavit on which the certiorari was allowed.    But
if the affidavit did not show in the proceedings, or set forth any
grounds of error, it was the duty of the common pleas to quash
the certiorari, and the Supreme Court would grant a mandamus
to compel it to do so (18 *Wend.* 550).    If the ground alleged
for error, was error of fact, which the justice could not answer,
it was brought before the court by an assignment of error of fact
(12 *Wend.* 266).    By the present system the appellant's affidavit
and the respondent's counter affidavit, if he sees proper to make
one, are both served on the justice before he makes his return,
and he is required to make a return to the appellate court, of the
testimony, proceedings and judgment.    The justice's return is in
some measure responsive to the affidavits of both parties, and
either party may apply to have the return amended, if necessary.
When the return is complete, it shows to the County Court,
with sufficient certainty, the erroneous proceedings and decisions
of the Justice's Court, so far as the appeal is founded on them,
without a more formal specification.    But when the appeal is
founded on some irregularity or error not contained in the pro-
ceedings before the justice, or in the language of the 366th sec-
tion of the Code, when the appeal is founded on an error in fact,
in the proceedings, not affecting the *merits* of the action, and not
within the knowledge of the justice, the return can give the
County Court no information on the subject.    In such cases no
errors or irregularities can be brought before the County Court,
except by the appellant's affidavit.    He must, therefore, state in
his affidavit, in addition to his statement of the testimony and pro-
ceedings before the justice, the grounds upon which his appeal is
founded.    This statement and the respondent's counter affidavit
are in such cases equivalent to an assignment of error of fact,
and the answer thereto, and present questions which the court
may determine upon affidavit or upon the examination of wit-
nesses (*Code of* 1851, § 366).    This is clearly a simplification
and improvement of the old system.    In the case under consider-
ation the errors complained of, if there were any, and upon which
the appeal to the County Court was founded, were contained in

the proceedings before the justice, and were committed by him. These are sufficiently apparent upon the justice's return to the County Court. The matters brought before us for review, are the judgment of the County Court, affirming the judgment of the Justice's Court, and the premises on which it was found, and an examination must be confined to these subjects. The first material erroneous decision of the justice, which appears on the proceedings returned by him, was that by which he permitted the plaintiff to prove an important part of his assumed case, by his own declarations to third persons. The plaintiff had pretended to justify himself in abandoning the work he had undertaken to do for the defendant, at a specified price, and charge for what he had done, by showing a failure on the part of the defendant to furnish funds as he had agreed to do, to enable the plaintiff to proceed with the work. Harper, a witness for the plaintiff, had testified that he worked for some time for the plaintiff on the house which he was building on Heacock street. That while he was at work he saw the defendant there talking with the plaintiff. On his cross-examination by the defendant the witness said, in substance, that he did not know the defendant then, but after he went away the plaintiff told him that he was the defendant, and that he could not get money from him to go on with the work. The plaintiff's counsel on a reëxamination of the same witness, asked him why the plaintiff did not go on with the work, and the justice under the objection of the defendant, permitted the witness to testify that the plaintiff told him that the reason why he did not go on with the work was, that the defendant would not pay him as fast as he got along, under the pretence that *that* was a part of the conversation which the defendant had called out on the cross-examination. The whole subject of the cross-examination, so far as it is embraced by the question under consideration, was the knowledge which the witness had, that the man whom he saw talking with the plaintiff was the defendant. When he had answered that he had no knowledge of that fact, except what he got from the plaintiff, his cross-examination upon that point was exhausted. He had no right to go on and state what the plaintiff told him, nor does it appear by the justice's return that the defendant inquired what

the plaintiff told the witness, even on that subject; and if he had it did not authorize the plaintiff to call for his own declaration, on an entirely different subject, although they might have been made at the same time, or in the same conversation. This permission of the plaintiff to introduce his own statement as evidence, to prove the most important part of his case, was, to say the least of it, a palpable misapplication of the rule of evidence, which was referred to to justify it. Another material error committed by the justice on the trial, as appears by his return, was permitting the plaintiff to prove by parol a further or other agreement than the sealed one, under which he built the house, without showing that the said contract had been broken, rescinded, abandoned or had expired. This was objected to by the defendant, on the ground that parol evidence was inadmissible to vary the terms of another subsisting agreement on the same subject, under seal. But the justice permitted the plaintiff to give evidence tending to show a parol agreement on the subject of the sealed contract, while that was in full force, materially varying the terms of the covenant against the defendant, as the ground upon which the plaintiff's action was founded. This was a violation of a well settled rule of law to which it is believed there is no recognized exception (13 *Wend.* 71; 21 *id.* 628; 23 *id.* 82; 4 *Hill,* 584). The County Court should have reversed the judgment of the Justice's Court on these grounds. In addition to the above errors, the justice's judgment was *clearly* wrong upon the merits, and contrary to the justice of the case, as it appeared upon the trial. The justice certifies that his return contains the substance of the testimony and proceedings had before him, and yet it does not contain any legal evidence to support his judgment. The defendant proved that the plaintiff was under a covenant to do the work which he did for the defendant The plaintiff attempted to show that this covenant was varied by a subsequent parol agreement. Besides the incompetency of parol evidence to have that effect, the plaintiff did not, even with the help of his own testimony, prove any parol attempt to vary the sealed contract. There was nothing in the conversation which he testified to, purporting to release him from any of the obligations of his covenant, or to impose any new obligation, in that

respect upon the defendant; the most that the plaintiff's testimony on this subject tended to show, was a parol promise of the defendant, without any consideration, to let the plaintiff have money as fast as he wanted it, to go on with the work; not as payment for the work, nor in lieu of the payments which the plaintiff had covenanted to receive when the work was done. This was wholly insufficient to produce the effect claimed for it by the plaintiff, and given to it by the justice. In such a case the County Court ought to have reversed the judgment of the Justice's Court, and erred in not doing so (Carter vs. Dallimore and others, 2 *Sand. S. C. Rep.* 222; Adsit agt. Wilson & Chamberlain, *ante p.* 64). For the above errors the judgment of the County Court must be reversed. The judgment of the County Court and that of the Justice are reversed.