## † HAYNES *versus* FULLER *& al.*

A bond for the conveyance of real estate, on the conditions being performed within ten days, which provides that it shall be void in case of the accidental non-reception of the deed of the premises from certain persons in whom the title is supposed to be, is binding, although at the time of its execution, the title to the land is not held by the persons supposed.

And such a bond is valid, although the agent of the obligors, holding the title, is unable to make the conveyance to the defendants, within the time allowed, through pressure of business.

A waiver in writing of strict performance of a specialty, must clearly appear. It must be the act of the party having something to waive, and not of the party pleading it.

The performance of a contract under seal, cannot be waived by a parol *executory* agreement.

But where the performance of the condition of a bond is limited to ten days, by the instrument, and an agreement made on good consideration to waive the performance as to time, is proved, but no time fixed for the performance, in determining what is a reasonable time, regard must be had to the original contract, and forty days delay would be too late.

ON REPORT from *Nisi Prius,* HATHAWAY, J., presiding.

DEBT, on a bond dated July 11, 1854. The writ was dated Sep. 8, 1854. The essential part of the condition was, " that if the said Haynes, his heirs or assigns, within ten days from the date hereof, shall make payments in money and good notes, as hereinafter stated, we bind ourselves to sell and convey to said Haynes, the following described parcels of land, at $5 per acre, one third part to

be paid in money, on reception of deed, and the remainder in equal payments, with annual interest and taxes, in satisfactory paper, on one and two years. It is hereby provided that this bond is not to be binding in case of the accidental non-reception of the deed of said land by us for the Joy heirs."

The general issue was pleaded, and by way of brief statement, the defendants alleged performance of the conditions; likewise a waiver of strict performance by plaintiff, and a reasonable time given within which time a proper deed was tendered to plaintiff.

The plaintiff introduced his bond, on the back of which was this writing, signed by defendants: — " July 21, 1854. We hereby acknowledge the receipt of eight hundred dollars, and the tender of balance of first payment of land within described, and of the notes."

There was also another writing on the back of the bond, signed by defendants, without date, as follows: — " If the within described land is conveyed, the within named Henry P. Haynes having paid as agreed, and duly demanded a deed of us, we hereby promise to pay him one hundred and five dollars for the hemlock logs and bark, peeled by Person Whittier and Joshua Tate, when we shall convey the land to him according to the bond, we having said logs and bark for that sum, and charging said Haynes nothing for what we have paid, or are to pay, said Whittier and Tate for peeling same, or for what we have paid, or are to pay for hauling out and looking after the bark, having four months to get off the logs."

By the deposition of Nehemiah Ball, introduced by defendants, it appeared, that he purchased the land described in the bond, of the Joy heirs, as agent of defendants, on July 8, 1854, — that he was requested by defendants to make a conveyance of a portion of this land to them, about the 20th of said July, but was prevented by press of business, — that, on Sept. 6, 1854, he conveyed a part of it, and in the same Sept. the balance of it, to said defendants, (the

witness lived in Massachusetts,) that he went home on July 25th, and on next, and ten following days, was confined to his bed by sickness, and to his room for ten days in addition, and unable to transact business.

This deed was introduced, and also a deed of part of the same land from said Nehemiah Ball to defendants, dated Sept. 6, 1854, and of the balance by a deed of Sept. 25, 1854. They also introduced their own deed of the land to plaintiff, dated Sept. 8, 1854, and evidence that it was tendered to him on the ninth of the same month, which plaintiff refused, saying the bond was broken.

On the 21st and 22nd of August of 1854, a large part of the land described in the bond was burnt over by an accidental fire.

There was evidence tending to show that plaintiff, the first part of August, 1854, claimed to own this land, and said he had a bond for a deed, sought a surveyor to run out a portion of the land into lots, and that he had employed some one or more to peel bark upon the tract, and had taken some away. On the ninth of August, the surveyor was directed to run off a meadow lot for plaintiff's father.

It also appeared that Whittier and Tate, had bargained with defendants before the bond was given, as to cutting from a parcel of this land and had peeled bark upon it, and they continued to work thereon after the giving of the bond.

The plaintiff also introduced evidence tending to prove, that when the first payment was made, defendants said they had not a deed ready — their deed from Ball had not come, but that plaintiff should have a deed in the course of three or four days, and that plaintiff said it would make no difference if he could have it then. That one of defendants, on Aug 1st, told plaintiff he would send the deed when it was ready, if he got it before the convention, at any rate he should be at the convention, and it might be relied upon then. (This convention was on Aug. 8th.) But no deed was then given.

It also appeared that the contract in relation to the logs and bark, upon the back of the bond, was a short time before August 20, of that year.

When the first payment was made, nothing was said to plaintiff about the title being in Nehemiah Ball.

The Court were authorized, upon the evidence reported, to render judgment by nonsuit or default.

*Peters,* for defendants.

1. The bond was only to be effectual upon a contingency — and there was an *accidental non-reception of the deed from the Joy heirs.* If so, this action is not maintainable, but only one for money had and received.

2. On the merits of the case our defence is, that there was a waiver of strict performance, and that a deed was procured and tendered within reasonable time.

The time for the performance of a sealed instrument may be enlarged by parol. 7 Cowen, 48; 3 Johns. 528.

The evidence of waiver is in the acts of possession, by plaintiff, of the premises up to, and even after the fire, for he took off some of the timber after that.

There is also evidence of waiver in the indorsement written by plaintiff on the bond. It contains this phrase; *" when we shall convey the land to him according to this bond."* This makes it evident that the land might be conveyed after that indorsement, which was made just before the fire.

Now if there was a waiver and the time was not agreed upon, then the deed is to be given in a reasonable time.

We tendered it in a reasonable time. The delay was occasioned by Nehemiah Ball, not by defendants, and he was unable to give it earlier on account of sickness.

Plaintiff was not injured by the delay; the land became injured during the delay; that was the act of God, not of these defendants.

*A. Sanborn,* for plaintiff.

APPLETON, J.— On the 11th day of July, 1854, the defendants gave the plaintiff a bond, the condition of which was, that "if the said Haynes, his heirs or assigns, within ten days from the date hereof, shall make payment in money and good notes, as hereafter stated, we bind ourselves, our heirs, executors, administrators or assigns, to sell and convey to the said Haynes, his executors, administrators or assigns, the following described parcels of land, situated in Corinth, (here follows a description,) at five dollars• per acre, one third to be paid in money on *reception of the deed,* and the remainder in equal payments, with annual interest and taxes, in satisfactory paper, in one and two years, &c., and it is hereby provided that this bond is not to be binding in case of the *accidental non-reception of the deed of said land,* by us, for (from) the Joy heirs," &c.

At the date of this bond, the title of the land to be conveyed was in one Nehemiah Ball, who, on the 8th of July, had, at the instance of the defendants, procured a conveyance of the same from the Joy heirs to himself.

The fact, that when the bond was given, the title had passed from the Joy heirs, affords no ground for regarding the contract as null and void. The defendants were well aware of that, for Nehemiah Ball was their agent in the negotiation by which the title was procured. The very implication of the bond is, that the title was not in the defendants, but that it was thereafter to be obtained by them. The defendants cannot take advantage of the circumstance, that the Joy heirs had parted with the title, for it was through their procurement, and for their benefit. So far as regards the plaintiff, it was immaterial to him where it might be at any time, if it should be conveyed to him at the expiration of the bond.

The time in which the payments were to be made, and in which the title was to be conveyed, was but ten days from the date of the bond. The object of the proviso, by which it was to be void in case of "accidental non-reception" of the deed, would seem to be to guard against any accidents,

by mail or otherwise, which might prevent the seasonable conveyance of the deed.

As the title to the premises was in Nehemiah Ball as early as the 8th of July, and as he was the agent of the defendants in procuring it, no reason is perceived, why an effort should not have been made forthwith upon the execution of the bond, to obtain a conveyance of the Joy title. It would appear, however, from the testimony of Ball, that no request for a deed was made, till about the 20th of July, and that the only reason why it was not then executed, was on account of the pressure of business. This request for a deed was made of him while he was in this State, which he did not leave for home till the 24th of July. The pressure of business can afford the defendants no excuse for not obtaining seasonably a deed. It only amounts to this; that on July 25th, Mr. Ball had other business, which he regarded as of more importance, than the execution of a deed to the defendants, of the land, which he had purchased as their agent. It does not appear but that if the request had been made at an earlier day, it would have met with a ready compliance. But the "non-reception" of a deed cannot be regarded as "accidental," because it may have been occasioned by delay in demanding or the pressure of other engagements on the part of the person by whom it was to have been executed.

No such accident in the non-reception of the deed is shown, as will entitle the defendants to regard the bond as not binding on them.

At the expiration of the time limited in the bond, the money payment was duly made, and the following receipt signed by the defendants : —

"July 12, 1854.

"We hereby acknowledge the receipt of eight hundred dollars, and the tender of balance of first payment of land within described, and of the notes. "James Fuller,

"Benj. Ball."

The defendants not having at this time the title, request-

ed further time in which to procure it, promising that it should be ready in a few days, with which the plaintiff expressed himself fully satisfied. The plaintiff took possession of the premises for which he had contracted, and exercised various acts of ownership over them. No deed being had, the defendants were again called upon, and again promised to convey in a short time, or as soon as they should obtain the title. While things were in this condition, some time after the 8th of August, a fire commenced in the neighborhood, and while it was raging and before it had done any injury to the lands referred to in the bond, the following indorsement thereon, written by the plaintiff, was signed by the defendants : —

" *If the within described land is conveyed,* the within named Henry P. Haynes, having paid as *agreed, and duly demanded a deed of us,* we hereby promise to pay one hundred and five dollars for the hemlock logs and bark peeled by Person Whittier and Joshua Tate, *when* we shall convey the land to him, according to the bond, we having said logs and bark for that sum, and charging said Haynes nothing for what we have paid, or are to pay, said Whittier and Tate for peeling the same, or for what we have paid, or are to pay, for hauling out and looking after the bark, having four months to get off the logs.                    " James Fuller,
                                   " Benj. Ball."

Subsequently, the plaintiff, on the eighth of September, commenced the present action. The next day, the defendants having two or three days previously acquired from Nehemiah Ball the title of the Joy heirs, made a tender of a deed of the premises, which by their bond they had contracted to convey.

The defence set up is, that the plaintiff had waived the condition of the bond, so far as regarded the time of its performance ; and that a reasonable time in which to procure a deed had not elapsed, and consequently the action was prematurely commenced.

The indorsement on the back of the bond cannot be re-

garded as a waiver of the previous non-delivery of the deed, and as giving further time in which to procure the same. The defendants were not the parties to waive their own neglect, or to grant further delay. They were the parties to whom, if to any, favors were to be granted; for they had not previously complied with their contract and were not then in a condition to do it. It is rather a clear and distinct recognition of an existing liability on their part. They admit a payment to have been made according to the terms of the bond, and that a demand for a deed has been duly made. They admit all the facts necessary to the successful maintenance of a suit.

It is difficult to perceive how the plaintiff, by taking an admission from the defendants of their liability, can be regarded, by so doing, as having waived a discharge of it. The defendants were in fault and so admitted. "If the within land is conveyed," to the conveyance of which the plaintiff was then entitled by reason of a full performance on his part of all that was to be done and performed by him, then the defendants promised to account for the value of certain logs and bark, when they should make such conveyance. Whether it would be conveyed, is left uncertain. The defendants entered into no new stipulations as to their conveyance. No time is fixed in which a conveyance might be made. No waiver is made of past neglect. The plaintiff set no time in which a deed might be executed, nor did he obligate himself to receive a deed from the plaintiff thereafter, if one should be offered. He only took an acknowledgment, which would enable him to commence a suit, and a promise from the defendants, in case they should convey, to pay him a certain sum of money. This is not a waiver by the plaintiff but rather a promise to him.

It is further claimed in the defence, that there is a parol agreement to waive strict performance on the part of the defendants, and that such agreement is binding.

A party shall not be allowed to insist upon a forfeiture arising from a non-performance, which is the result of his

own acts.    The counsel for the defendants have relied upon the case of *Fleming* v. *Gilbert*, 3 Johns. 530, as establishing the doctrine, that the time of performance of a written contract may be enlarged by parol.    But in *Delacroix* v. *Bulkeley*, 13 Wend. 71, SAVAGE, C. J., says, "the case of *Fleming* v. *Gilbert*, as stated in the opinion of the Court, was upon a bond, the condition of which substantially was, that the defendant should, by a certain day, procure and deliver to the plaintiff a certain bond and mortgage, and discharge the same from the record.    The defendant did procure the bond and mortgage and offered them to the plaintiff, and offered to do whatever he required further, to discharge the mortgage of record; but the plaintiff not knowing what was necessary, entered into another agreement respecting further proceedings, by reason of which the defendant was prevented from taking further measures to discharge the mortgage of record.    This case is put upon the principle, that he who *prevents* a thing from being done, shall not avail himself of the non-performance he has occasioned.".

A contract not under seal, rescinding a specialty, where such contract is fully executed and carried into effect, is valid.    *Allen* v. *Jacquish*, 21 Wend. 628.    But a contract in writing will not be deemed to have been waived by a mere parol executory agreement, entered into by the parties, to vary or modify its terms.    *Adams* v. *Nichols*, 19 Pick. 275.    So it was held in *Richardson* v. *Cooper*, 25 Maine, 450, that a parol agreement to change a written contract, constitutes no defence to the original contract, while the same remains executory, unless its execution has been prevented by the act of the party attempting to enforce the written contract.

This suit, as has been seen, was commenced while the agreement for delay, if there was one, remained executory, and before the deed of the defendants was tendered.    The defence cannot be brought within any of the principles established in the cases to which we have just adverted.

Haynes *v*. Fuller.

It has however been held in New York, that after breach of a sealed contract, a right of action might be waived or released by a new parol contract in relation to the same subject matter, or by a valid parol executed contract. But a mere assent without any consideration, will not be sufficient. *Delacroix* v. *Bulkeley*, 13 Wend. 71.

In *Harbrook* v. *Tappen*, 15 Johns. 200, in delivering the opinion of the Court, THOMPSON, C. J., says, " all that the defendant ever said as to the extension of the term, was, that if the plaintiff would perform his contract, he would take no advantage of its not being done on the precise day. This could not be called an agreement to extend the time. No day was fixed to which the performance was postponed; and it would be a violent and unnatural construction of the plaintiff's conduct to consider it as intended to waive his covenant and enter into a new agreement, especially as such parol agreement would be void under the statute of frauds." These remarks apply with peculiar force to the present case, where it would be difficult to point out any specific or definite agreement, or any valuable consideration for the same, had one been proved.

If an agreement for delay had been fully established, and shown to be for a sufficient consideration, it would be a matter of grave question, whether the defendants had not been guilty of great and unnecessary delay in its performance. The defendants, by their bond, were to procure a deed in ten days. The excuse which might have sufficed in case of an " accidental non-reception" of the deed, would apply only to the time limited in the bond. In determining what would constitute a reasonable time, regard must be had to the original contract. The deed was delayed over forty days from the time in which, by the contract, it should have been ready, being over four times the original term in which it was to have been procured. This would hardly seem to be a reasonable time, in which a negligent party, resting upon the clemency of his antagonist, should have made amends by his promptness for past omissions.

The defence is not sustained, and a default must be entered. *Defendant defaulted.*