### ALEXANDER McMURPHY *v.* MARTIN V. GARLAND, & AL.

In a sale of the wood and timber standing upon a certain lot of land, it was stipulated that vendees might cut, carry away, and dispose of it, provided they paid over the proceeds thereof to vendor as fast as sold and paid for, subject to the approval of the vendor, to the amount of $6000, and interest; it was *held* that vendees were to pay over the gross proceeds of the wood and timber without deducting the cost of cutting and taking to market.

And it was also held that the contract being under seal, a subsequent parol agreement that these expenses should be deducted, could not affect it.

COVENANT broken. The declaration was, that on the 2d day of November, 1863, plaintiff covenanted that defendants might cut, carry away and dispose of all the wood and timber on a certain lot, provided defendants should pay over to plaintiff the proceeds of said wood and timber as fast as sold and paid for subject to the approval of plaintiff, in consideration whereof defendants agreed to pay over to plaintiff the proceeds of said wood and timber as fast as the same should be sold and paid for agreeably to the above specification to the amount of $6000, with interest from Oct. 19, 1863, annually, with breach in usual form.

The defendants offered to prove that, subsequent to the making of the contract declared on, it was agreed and assented to by the plaintiff by a verbal arrangement with the defendants, that he should receive the estimated part of the gross proceeds of the sale of the wood and timber, as made from time to time, and that the remainder, being substantially the cost of cutting, hauling and loading the wood and timber, should be retained by the defendants to be used in operating the rest of the wood and timber on the lot; the plaintiff receiving enough with the wood and timber remaining uncut on the lot to make him safe from loss by reason of the sale or other disposition of the wood and timber by the defendants until the whole sum due him was paid.

The court, *pro forma*, ruled that the "proceeds of said wood and timber, as fast as the same should be sold and paid for," were the gross amounts received by the defendants for the wood and timber, without any deduction for cost of cutting, hauling, or other expenses, and that the evidence offered by defendants was not admissible, and defendants excepted.

*Morrison & Stanley*, for plaintiffs.

In this case it is necessary first to determine the true construction of the contract. This construction should be such as to carry out faithfully the intention had by the parties at the time the contract was made, so far as the words used, properly construed, and the rules of law, will allow. Parsons on Contracts, vol. 1, page 6.

A contract should not be changed, because the limitation of the power of the defendants can be construed differently from what the general and common-sense meaning of the words in the contract indicate, without materially changing the security of one of the parties, as against the other, from loss.

The words that compose the contract must have been well and deliberately chosen and understood by the parties ; for the contract was given under seal.

The words of the agreement, that the defendants should pay over to the plaintiff the proceeds of the wood and timber as fast as the same should be sold and paid for, subject to the approval of plaintiff, clearly indicate that the defendants should pay to the plaintiff the whole amount received by them for wood and timber, without deducting any expense for cutting and hauling the same.

By this construction the defendants would sooner discharge the obligations of the contract, and thereby have left a larger quantity of wood and timber to dispose of as they saw fit, than by the construction claimed by defendants ; so that it cannot be oppressive to the purchaser, as is alleged in counsel's brief for the defendants.

The defendants absolutely bought the wood and timber, and agreed to pay to the plaintiff the sum of six thousand dollars for the same, as is clearly shown by the contract. The terms of the contract distinctly point out how and when the six thousand dollars shall be paid, as follows : that the proceeds of said wood and timber, as fast as the same should be sold and paid for, which were the gross amounts received by the defendants for the wood and timber, without deducting any expense for cutting and hauling, or any other expense, were to be paid to the plaintiff.

The construction claimed by defendants might operate unfavorably to the plaintiff, for if there were not wood and timber enough, while standing, to be worth six thousand dollars, the plaintiff would not get the full amount agreed upon in the contract ; or, if the defendants should in any manner be delinquent in cutting and preparing the wood and timber for market, as the plaintiff has no power to protect himself against such neglect, it would be to the loss of the plaintiff. The plaintiff

should not be made to take all the risk of the speculation, as to whether or not it will prove profitable to the defendants. No such construction can reasonably be given to the contract.

No subsequent parol agreement can change the time or mode of performance of an act, covenanted to be done, in a contract under seal. Chitty on Con. (5th Am. ed.,) page 112 ; 1 Phil. Ev. (4th Am. ed.,) pages 563, 564 ; *Kelleram* v. *Brown*, 4 Mass. 443 ; *Braddick* v. *Thompson*, 8 East. 209 ; *Harlow* v. *Thomas*, 15 Pick. 66 ; *Storer* v. *Freeman*, 6 Mass. 435 ; *Child* v. *Wells*, 13 Pick. 121 ; *Hodgdon* v. *Waldron*, 9 N. H. 67 ; *Merrimack Co. Bank* v. *Brown*, 12 N. H. 320 ; *Beach* v. *Steele*, 12 N. H. 82 ; *George* v. *Bartlett*, 22 N. H. 496 ; *Lang* v. *Johnson*, 24 N. H. 302.

*S. N. Bell*, for defendants.

The first question presented by the case is, what is the proper construction of the agreement that the defendants should pay over to the plaintiff the proceeds of the wood and timber as fast as the same should be sold and paid for.

The intention of the parties, so far as it can be gathered from the contract, is to be carried out. And the court will look at the subject-matter of the contract, and the object to be attained, as bearing on its construction. *Merrill* v. *Gove*, 29 Me. 346.

The only object to be attained by the limitation of the power of the defendants to dispose of the property or its proceeds, was to give the plaintiff security for the payment of the amount due, and to guard him against loss. For this purpose the sales were to be subject to his approval, and the proceeds of the wood and timber were to be paid him as fast as it was sold and paid for. It is evident that the plaintiff, if he received the value of the wood and timber as fast as it was cut and sold, and had a lien on all the wood and timber left standing, would receive and retain security for all that would be due him for the remainder of the purchase money.

The purpose of the contract is fully answered by a restriction which prevented the defendants from applying the proceeds of the sale to any other purpose than the payment of the amount due, estimating the wood and timber at its value when standing, and before the labor of the defendants had changed its character and added to the price which it would bring when sold.

If he received payment for the wood and timber estimated at its value when standing, or by deducting from the price for which it was sold, the cost of cutting and hauling, he was paid in proportion as the wood and timber were removed, and when the whole was so removed the amount so received would satisfy the whole debt. The plaintiff has also the means to protect himself from the effect of improper sales by the power retained by him, that the sale should be subject to his approval.

The construction for which the plaintiff contends would operate oppressively on the purchaser, because by it he would be compelled to pay to the plaintiff, not only the full value of that which he had purchased,

but also the cost or value of his own labor and that of his servants, which had been added to the value of the wood and timber, in cutting it and preparing it for market.

Upon no reasonable construction, considering the subject-matter, the usages in relation to cutting wood and timber, and the object to be attained by the restriction, can the view of the plaintiff be sustained.

The construction claimed by the defendants was upheld in relation to a similar contract in *Briggs Iron Co.* v. *Richardson*, 4 Allen 371.

The parties to a written contract may afterwards by a parol agreement, substitute a different mode from that contained therein for the discharge of its obligation, and proof of the fulfillment of the parol agreement will be a defence to the suit on the original contract. *Richardson* v. *Cooper*, 12 Shep. 450; *Robinson* v. *Batchelder*, 4 N. H. 410; *Wiggin* v. *Scammon*, 7 N. H. 360; *Cummings* v. *Arnold*, 3 Met. 486, and cases cited; *Cummings* v. *Putnam*, 19 N. H. 569; *Low* v. *Treadwell*, 3 Fairf. 441; *Munroe* v. *Perkins*, 9 Pick. 298; *Richardson* v. *Hooper*, 13 Pick. 446.

The rule is the same if the contract is under seal. *Lattimore* v. *Harsen*, 14 Johns. 330; *Dearborn* v. *Cross*, 7 Cow. 48; *Fleming* v. *Gilbert*, 3 Johns. 528.

BELLOWS, J.    The first question is, what is the true construction of defendants' promise to pay over the proceeds of the wood and timber as fast as the same should be sold and paid for? Is it the net proceeds after deducting the cost of cutting, hauling, and selling, or is it the gross proceeds without such deduction?

It appears that the plaintiff on his part covenanted that defendants might cut, carry away and dispose of all the wood and timber on a certain lot of land, provided they paid over to plaintiff the proceeds of the same as fast as sold and paid for with plaintiff's approval; and defendants agreed to pay over such proceeds to the amount of $6000, and interest annually, from Oct. 19, 1863. The transaction apparently was a sale by the plaintiff to the defendants of a large lot of wood and timber standing upon a certain lot of land, with permission to cut and sell it, paying the proceeds of it to the plaintiff as fast as received, to the amount of $6000; and it was evidently contemplated by the parties that defendants would cut and carry the wood and timber to market and sell it. They might, it is true, sell it, with plaintiff's approval, while standing upon the land, and then the price received would be the sum to be paid; but in endeavoring to ascertain the sense in which the parties used the term "proceeds," it is fair to assume that the parties contemplated the cutting of the wood and timber and a sale in market.

That being the case, the term "proceeds of the wood and timber" is broad enough to include the gross amount of sales, and unless controlled by the apparent intention of the parties to be collected from the whole instrument, we think this would be the true interpretation, although it must be admitted that the terms are not so explicit or free from ambiguity as to remove from the mind all doubt as to that interpretation. Had it been the purpose, however, of the parties to require the payment

only of the net proceeds of the wood and timber after deducting the cost of getting it to market, it would have been most natural to have used some such qualifying terms, and the want of them leaves it fairly open to the inference that no such qualification was intended, especially when a sale in market was contemplated, and a payment of the proceeds when the wood and timber was *sold and paid for* agreed upon.

It is urged by defendants' counsel that it would be oppressive to require them to pay the gross proceeds of the wood and timber without retaining anything for the expenses of the operation, and therefore such a construction ought to be avoided if it may be, and it is very true that the circumstances of the defendants might be such as to make it very injudicious to enter into such a contract; how that was in this particular case we neither know, nor can know, the only inquiry being what is the fair construction of the language used. Upon the face of the contract there is nothing unreasonable in this view of defendants' stipulations. They had bought the wood and timber of the plaintiff, and were to pay him a large sum for it; and we see nothing unreasonable in their agreeing to pay him the first gross proceeds of the wood and timber to the amount of $6000, if they could command the means to take it to market, any more than to agree to advance to him a part of the price before cutting any of the wood and timber. Indeed, we can easily imagine there might be some embarrassments of a serious nature arising out of a contract to pay only the net proceeds after deducting the expenses, such as determining the amount of those expenses, including, perhaps, the cost of manufacturing lumber, involving the necessity of keeping careful accounts, losses from bad debts, commissions for making sales, and the like; and, besides, the payments to the plaintiff might be postponed until all the expenses upon the entire quantity had been reembursed. Upon the grounds taken by the defendants' counsel this would be so, and it might well be supposed that a prudent man would hesitate to enter into an arrangement involving such difficulties.

On the other hand, the payment of the gross proceeds of the sales would be attended with no such embarrassments, and would naturally be recommended to the parties as the most simple and efficient means of preserving the plaintiff's security, and when the $6000 was paid the remainder of the wood and timber would be free from incumbrance.

In *Caine* v. *Horsfall & al.*, 1 Exch. 519, the plaintiff was in the employment of the defendants as captain and supercargo in the African trade, and the question was upon the construction of defendants' letter to the plaintiff, in which they say, "your commissions are £6 per cwt. on the *net proceeds* of your homeward cargo, after deducting the usual charges as arranged by the African association, on £4 per ton from the gross sales of the oil when taken from the quay, and £4 15s when warehoused; no commissions allowed on watered oil." It was decided that the term "net proceeds" in mercantile language means the sum actually received after making all deductions, and that the commission was payable only on the sums actually realized after deducting bad debts as well as other charges. In reaching this conclusion much stress was placed upon the word "net," indeed, the case turned upon it; the court,

as it was, entertaining some doubts whether a commission should not be allowed on the whole without deduction for bad debts.

In the case before us, there is nothing to qualify or restrict the term "proceeds," and as it is evident that the wood and timber were to be cut and taken to market, and when sold and paid for, the proceeds to be paid to the plaintiff, we are of the opinion that he was entitled to the whole without deductions for cost of cutting, manufacturing, and taking to market.

We have examined the case of the *Briggs Iron Co.* v. *Richardson*, 4 Allen 371, cited for defendants. That was a sale of the wood and timber on the Gove lot for $3000, of which $500 was paid at the time by an endorsed note, and the rest by the notes of the vendee, and it was stipulated in substance that the vendee should not remove any wood or timber from the lot beyond the value of $500, but that all wood and timber so cut beyond that amount should remain the property of the vendor until paid for.

In substance it was an agreement that having paid $500, he might remove wood and timber to that amount, but no more, until paid for, although it is to be inferred that he was at liberty to cut more. The purpose, obviously, was to allow the vendee to take away the wood and timber so fast as he paid for it, and there is nothing to show that the value was to be estimated otherwise than as it was when sold, that is, standing. In this respect, it differs from the case before us, and does not govern it.

The remaining question is, whether the evidence offered of a subsequent parol agreement to the effect that plaintiff was to receive the proceeds of the wood and timber after deducting the cost of cutting, hauling and loading it, ought to have been received.

Upon this point it will be remembered that the contract was under seal; that as now construed the defendants covenanted to pay to plaintiff the gross proceeds of the wood and timber, and that the offer was to prove a subsequent parol agreement that there should be paid only the net proceeds, after deducting the expenses.

In respect to a specialty, the general doctrine is well established that such a contract can be discharged or modified only by an instrument of as high a nature. *Unum quod que dissolvi eo ligamine quo ligatum est.* Broome's Legal Maxims, sec. 683, and note 5, and cases cited; *Head* v. *Wadham*, 1 East. 619; *Roe* v. *Harrison*, 2 T. R. 425; *Kayes* v. *Waghorne*, 1 Taunt. 428; *Cocks* v. *Wash*, 9 Bingh. 341, which holds that the legal effect of an agreement under seal cannot be altered by parol averment; and so is *Davrey* v. *Prendergrass*, 5 B. & Ad. 187, where it was held to be no defence to a suit on a bond against a surety that time was given to the principal. Much the same are *Hardin* v. *Clifton*, 1 Adol. & Ellis, N. S. 522, and *Rippinghall* v. *Lloyd*, 5 B. & Ad. 742; *Rogers* v. *Payne*, 2 Wils. 376.

To this general principle there are some exceptions, and among them these : that, after a breach, an accord and satisfaction of the damages, though by parol, may be pleaded; although it is held that accord and satisfaction before breach cannot be pleaded. *Kayes* v. *Waghorne*, 1

Taunt. 428. So, where the performance of a covenant has been prevented by the act of the covenantce, or a condition of forfeiture has been waived by him. 1 Greenl. Cruise Dig. Tit. 13, ch. 2, sec. 25; *Leather* v. *Bullard*, 8 Gray 545. And it has also been held that the time of performance may be subsequently extended by parol, and in some cases the place of performance also; see 3 Cowan's Phillips Evid. 148, and cases collected; and *Mill Dam Foundry Co.* v. *Hovey*, 21 Pick. 417.

As to the waiving of a condition by parol, it is often put upon the ground of saving a forfeiture; and where the time of performance has been extended and the covenanter has acted upon it, the covenantee ought to be estopped to claim that the contract was broken, for it would be a fraud for him to make such claim. It would stand, indeed, upon much the same ground as if he had himself for his own convenience prevented performance at the day. The case of a building contract where the time, and even the mode of performance, are changed by mutual consent, and those changes acted upon, furnish ample illustrations of these views.

We find, however, no cases that sustain the principle involved in the defendants' offer of proof in the case before us; on the contrary, the authorities, as we understand them, are strongly against it.

In *Blake's Case*, 6 Co. Rep. 436, the doctrine is thus laid down: Where a duty accrues by a deed in certainty, as a covenant to pay money, although the duty be merely in the personalty, a discharge must be by deed; but where no certain duty accrues by the deed, but a wrong or default subsequent, together with the deed, gives an action to recover damages which are only in the personalty, for such wrong or default, accord with satisfaction is a good plea, and such plea was held good in covenant for not repairing.

In *West* v. *Blakeway*, 2 M. & G. 729, there was a covenant in a lease to yield up all erections made by the tenant during the term, and it was held that the covenant was broken by the removal of a greenhouse built by the tenant with the assent of the landlord, and his agreement that the tenant might remove it at the end of the term. The case was much considered, and distinguished from a case where an act was done by the lessor which prevented the lessee from performing his covenant. The court say that cases where conditions in bonds have been waived, or performance prevented by the act of the obligee, do not apply; that here is a covenant under seal which could be discharged only by an instrument of as high a nature; but that the attempt here is to set up an executory agreement by parol, in answer to an action for breach of a covenant committed at the end of the term; and *Bosanquet, J.*, says, that no rule of law is more fully established than this, that a contract under seal cannot be waived by parol. This decision was in 1841, and following it in 1845, is the case of *Muston* v. *Gladwin*, 6 A. & E. 953, where the lessee covenanted to "insure and keep insured" the buildings in the joint names of himself and the lessor, with a proviso for re-entry for breach of the covenant, and the lessee insured in his own name alone, but showed it to the lesssor who assented to it

and was satisfied, continuing to receive the rent; afterwards the lessor's assigns brought ejectment, and the court held that this was a continuing covenant, and the assent of the lessor would not bind the assignee, and that the waiver by acceptance of rent would not operate beyond the time up to which it was accepted; and this being a continuing covenant, a subsequent breach entitled the lessor of the plaintiff to re-enter. The court say that this ejectment must be considered as unusually harsh, and it is impossible for any court to lend itself willingly to enforce the proceeding; but the court say that no case has gone to the length of intimating that a breach of covenant can be justified by a parol license to break it. This, they say, would be to confound well established legal principles.

In the case of *Barnard* v. *Darling*, 11 Wend. 30, it was held to have been settled once that a sealed contract could not be discharged by parol, but that it is not now entirely clear.

In *Delacroix* v. *Bulkeley*, 13 Wend. 71, the cases on this subject are reviewed by *Savage, C. J.*, and the conclusion reached that there has been no innovation upon established principles, and that the law remains as it always has existed, that a sealed *executory* contract cannot be released or rescinded by a parol *executory* contract, but that after a breach, a right of action may be waived or released by a new parol contract in relation to the same subject-matter, or by any valid parol executed contract.

In this case there was a lease of a store, and a covenant to put it in order and repair, and afterwards the lessor found it better to rebuild, which he did with the lessee's assent, he making suggestions as to fitting it up and speaking of it as the store he was to have; but afterwards he refused to execute his covenants, and was sued on them by the lessor, but it was held that evidence of this parol assent was not admissible.

In Ch. on Con. sec. 105, and notes, it is laid down that a subsequent parol agreement to vary or dispense with a sealed contract is not good, and such is supposed to be the law in *Lawrence* v. *Dole*, 11 Vt. 549. In Broome's Legal Maxims the law is summed up thus : "That, in order to relieve a party liable on a specialty, there must be either an agreement under seal, or an accord and satisfaction as to damages."

Upon a careful consideration of the adjudged cases, we are of the opinion that the evidence in question was rightly rejected. The authorities are numerous, and some have been cited in this case, to the point that a written contract may be varied or altered by a subsequent parol contract, but these are cases of contracts not under seal, and therefore a subsequent verbal contract is of the same nature. We do not find any adjudged case of that character where the contract was a sealed one, unless it comes within some of the exceptions before indicated.

In the case before us, the covenant was to pay the avails of wood and timber sold from a certain lot of land, and this was an executory contract; the offer of defendants was to show a subsequent parol executory contract to pay such proceeds, only after deducting expenses of cutting, taking to market and selling, and upon this point we think the authorities cited are decisive against the defendants.

*Case discharged.*