EGLESTON *vs.* KNICKERBACKER.

Money paid by the debtor to the creditor, to be applied on a bond and mortgage, and which the creditor omits thus to apply, but obtains a decree in a foreclosure suit for the whole amount, can not be recovered back in an action for money paid, or money had and received.

The proper remedy in such a case is a motion to open the decree, to enable the defendant to prove his payments before the referee.

While the decree remains in force it is conclusive upon the parties, that the amount therein expressed is the true sum due.

Parol evidence is inadmissible to contradict or explain a written agreement.

A receipt is so far an exception to this rule, that it may be explained *as to the consideration part,* when the explanation is not contradictory to, but consistent with, the instrument.

A receipt, absolute in its terms, can not be shown, by parol evidence, to be upon condition; except on a proceeding to reform the instrument for fraud or mistake.

THIS was an action for money had and received, and was commenced on the 29th June, 1848, and was heard before a sole referee in October of the same year, who reported that there was nothing due from the defendant to the plaintiff. A motion had been made on the part of the plaintiff to set aside that report, and the cause came before the court on a case containing the testimony and the exceptions taken on the hearing before the referee. The plaintiff proved that on the 4th May, 1846, he paid to the defendant $168, and took a receipt therefor, to be indorsed as interest on a bond assigned to the defendant by Jacob Merritt, against D. G. Egleston; and that on the 3d of May, 1847, he paid to the defendant the sum of $84, and took a receipt, to apply the same in full of interest on one equal undivided half of the sum of $2400, named in a bond and mortgage executed by Daniel G. Egleston to Jacob Merritt, and subsequently assigned to the defendant, on two brick buildings and lots 39 and 40, the said $84 to be applied as the interest on No. 40.

The plaintiff gave in evidence the enrollment of the proceed-

ings in this court, for the foreclosure of the mortgage, referred
to in the said receipts, wherein the defendant in this suit was
plaintiff, and the present plaintiff and others were defendants,
whereby it appeared that the said bond and mortgage were ex-
ecuted by Daniel G. Egleston, on the 9th of April, 1836, to
Jacob Merritt, for $2400, covering lots 39 and 40 and part of
No. 52 on the east side of Eighth-street, in the city of Troy;
that the same were assigned to the now defendant Knicker-
backer; that the mortgagor was dead; that the now plaintiff
and others were the owners of the equity of redemption, and
that the bill was taken as confessed on a personal service of the
subpœna; that no personal claim was made upon the now
plaintiff; and that the bill claimed interest on the said mort-
gage from the first of May, 1845, and the referee in said fore-
closure suit reported that there was due on the mortgage, on
the 25th of October, 1847, $2817,04. The plaintiff then proved
by the referee in the foreclosure suit, that in computing the
amount due on the mortgage, no credit was allowed for either
of the payments mentioned in the said receipts. That those
payments were treated as a deposit, to be applied on the bond
and mortgage in certain events, but what those events were he
did not know. That the now defendant, then plaintiff, was ex-
amined by the referee upon oath, as to payments, under the 91st
rule, and that the now plaintiff appeared by his solicitor before
the referee, but not in person. These payments were not ap-
plied, and the decree was taken for the whole sum due, without
making any deduction for said payments.

Evidence was then given on the part of the plaintiff tending
to show that those two payments mentioned in the receipts,
though expressed to be applicable to the interest on said bond
and mortgage, were not so to be applied except upon the happen-
ing of a certain contingency, which did not occur; and that
they were not in fact indorsed on the bond and mortgage, nor
applied thereto, and that the now defendant, after the decree
and on the day on which the premises were sold by the sheriff
under the said decree, and at other times, promised to refund

to the plaintiff the said sums of money.   There was also con-
flicting evidence on that point.

The defendant then introduced the original mortgage, men-
tioned in the decree, and the assignment thereof to him, and
proved that the now plaintiff was, at the time of the commence-
ment of the foreclosure suit, the owner of the equity of redemp-
tion of lot No. 40, and part of 52 described in the mortgage,
and the Kelloggs were the owners of the equity of redemption
of the remaining lot covered by the mortgage, being No. 39.
The defendant then proved by his solicitor in the foreclosure
suit, that the amount of the decree and costs was, on the 13th
of May, 1848, $3042,72.   The whole property sold for $2800,
and the defendant in this cause became the purchaser.   The
fees of the sale were $42,20.   The amount applied on the de-
cree was $2639,66, the amount of the deficiency was $284,92.
The foreclosure was commenced at the instance of the now
plaintiff.   He declined paying any more than half the interest,
after the Kelloggs became purchasers of one of the lots.

The defendant's counsel then offered in evidence the exami-
nation of the now defendant, before the referee in the foreclosure
suit, wherein the now defendant, then plaintiff, was examined
under the 91st rule as to payments, there being infant defend-
ants in said suit.   This was objected to by the plaintiff's coun-
sel as incompetent, on the ground that the defendant could not
be permitted to use his own oath in his own favor, and especi-
ally as whatever declaration he made on that occasion was
made when neither the plaintiff nor his counsel was present.
The objection was overruled by the referee, and the plaintiff's
counsel excepted.   The examination of the now defendant, as
plaintiff in the foreclosure suit, was then proved, in which he
testified to the receipt of the money mentioned in the receipts,
and that it was not indorsed on the bond and mortgage, and
said "*that it was understood between him and the now plain-
tiff that the amounts were not to be indorsed so that they could
be collected of the Kelloggs.*"   Other evidence was given, and
offers made, not material to the decision of the cause.

The defendant's counsel contended, before the referee, 1. That

Egleston *v.* Knickerbacker.

the moneys were applied at the time of the payment, by the terms of the receipts. 2. That the receipts could not be contradicted, and that they afforded no substantive ground of action. 3. That they should have been brought in in the foreclosure suit, on the reference before the referee, to compute the amount, and that the only remedy of the plaintiff now, was to open the decree. 4. That there had been no change of application of the moneys since giving the receipts. 5. That there was no promise to repay the money, and if one was made, it was without consideration, (1.) because the money was applied; (2.) because the pretended promise to repay was only in case the moneys could be collected of the Kelloggs, or raised by sale of the property, which could not be done; (3.) because the promise, if made, was so made in the full belief that the property was worth enough to pay the amount due.

On the part of the plaintiff it was insisted, 1. That there had been no application of the money mentioned in the receipts, to the payment of the bond and mortgage. 2. That the defendant had no right to apply such money on the decree, after the sale, without the plaintiff's consent, as the plaintiff was not in any way personally liable under the decree. 3. That there having been no application of such money, there was a sufficient consideration for a promise to pay, and that such promise had been fully proved.

On the 26th of December, 1848, the referee reported that he found that the application of the moneys paid to the defendant by the plaintiff, in the respective receipts mentioned, had not been changed by the parties; and that therefore there was nothing due to the plaintiff.

*H. Z. Hayner*, for the plaintiff.

*W. Hay and W. T. Seymour*, for the defendant.

*By the Court,* WILLARD, J. There is no doubt that the sums of money mentioned in the two receipts, actually came to the hands of the defendant before the foreclosure of his mort-

Egleston *v.* Knickerbacker.

gage, and that they were not credited by the referee in computing the amount due on the bond and mortgage. If those sums were intended as payments, according to the terms of the receipts, they can not be recovered back, whether they were allowed or not. It was the duty of the defendant in the foreclosure suit to bring in the receipts before the referee, and see that they were allowed; and if the referee improperly rejected them, to except to his report. The decree, while it stands in force, is conclusive evidence that the amount therein specified was justly due; and the present plaintiff can not impeach it in this collateral way.

The question whether this money was merely delivered to the defendant *as a deposit*, and not to be applied to the bond and mortgage, unless Kellogg paid a like sum, and to be refunded in case Kellogg omitted to pay, was a question of fact on which, as there was conflicting evidence, the finding of the referee must be deemed conclusive. The referee has found that the money was received in payment, and that the application thereof had not been changed by the parties. Unless the referee erred in receiving testimony on this point against the plaintiff's objection, the report can not be disturbed.

The referee probably erred in receiving, on the part of the. defendant, the examination upon oath of the defendant when, complainant in the foreclosure suit, taken in pursuance of the. 91st rule. The plaintiff attempted to prove that examination by the referee, but failed to do so; from a want of recollection on the part of the referee. The defendant then, against the plaintiff's objection, proved it by his own solicitor, who was present when it was taken. The declarations of the plaintiff in the foreclosure suit were competent evidence against him, wheth-. er taken under oath or not, but were not admissible in his favor. The circumstance that the plaintiff attempted, without success, to prove those declarations, did not render them admissible on, the part of the defendant. But the facts disclosed by that examination did not prejudice the plaintiff, and in such case we. are not required to disturb the report, although the referee erred in receiving the evidence. (*Smith* v. *Kerr,* 1 *Barb. Sup. Court*

*Rep.* 115.) Indeed, the evidence was more favorable to the plaintiff than against him.

But there was another objection, which seems not to have been made before the referee until the testimony was closed, viz. the objection against the evidence to contradict the receipts. If that evidence had been excluded, there would have been no color for the action. Unless the plaintiff could show the receipts to have been given upon condition, the referee was bound to treat them as applied according to their express terms. This leads to the inquiry as to the extent to which a receipt is open to explanation. By the general rule of evidence, independently of the statute of frauds, parol evidence can not be received to contradict a written agreement. The written instrument must be considered as containing the true agreement between the parties, and as furnishing better evidence than any which can be supplied by parol. (1 *Phil. Ev.* 561.) Even with respect to a receipt, it is only the consideration part which may be explained by parol; and the explanation which is admissible is that kind of explanation which is not contradictory to, but consistent with, the instrument. (*McKinstry* v. *Pearsall*, 3 *John.* 319.) Thus, in *Tobey* v. *Barber*, (5 *Id.* 68,) a receipt for "one hundred and sixty-three dollars in full for the second and third quarters' rent," was given in evidence, and the adverse party was allowed to show that the sum mentioned in the receipts embraced a promissory note for $115, given by a third person, payable at the bank, in four months, and that the maker failed, and took the benefit of the insolvent act, before the note became due. This evidence was not inconsistent with the receipt. It merely showed of what the consideration of the receipt was composed, and that the plaintiff had not been benefited by it to its full extent. To the same effect is *Johnson* v. *Weed*, (9 *John.* 310 ;) *Putnam* v. *Lewis*, (8 *Id.* 389 ;) and *Southwick* v. *Hayden*, (7 *Cowen*, 334.) The case of *House* v. *Low*, (2 *John.* 378,) is too loosely reported to afford much light on the subject. The defendant pleaded in bar of the plaintiff's demand a receipt in full, to which the plaintiff replied that it was given upon a condition which had not been performed by the defendant, on

which issue was joined. The justice found that it was given upon condition. The court say, "The evidence to show that the receipt was conditional, was admissible. The parties joined issue upon that, without raising any objection; and a receipt may be explained by parol." Whether the condition was contained in the receipt or out of it, does not appear, though the latter is to be inferred. Nevertheless it does not appear that the evidence was objected to, and the court obviously place their decision upon the ground that the parties joined issue upon that point without objection. The plaintiff should have demurred to the plea if he wished to raise the question whether a receipt absolute in terms could be shown by parol to have been given upon condition.

The doctrine prevailed for a short time in this court that a deed absolute in its terms might be shown, in a court of law, by parol evidence, to be a mortgage. (*Roach* v. *Cosine*, 9 *Wend.* 227. *Walton* v. *Cronly*, 14 *Id.* 63. *Swart* v. *Service*, 21 *Id.* 36. *Webb* v. *Rice*, 1 *Hill*, 606.) The doctrine was strenuously resisted by some of the judges, and never met the acquiescence of the bar. Moreover, it was found in practice to be fraught with all the evils which led to the passing of the statute of frauds, and was a clear departure from the wise provisions of that statute, and the maxins of the common law. (*Sternes* v. *Cooper*, 1 *John. Ch.* 429.) It was at length finally overthrown by the court of errors, in *Webb* v. *Rice*, (6 *Hill*, 219,) by a nearly unanimous vote, and the older and better rule restored. Under the law established by the last mentioned decision it is difficult to perceive how a receipt, absolute in its terms, could be allowed to be shown by parol evidence to be conditional, except on a proceeding to reform the instrument for an error occasioned by fraud or mistake.

In *Tobey* v. *Barber*, (5 *John.* 68,) already cited, the action was covenant for rent due on a lease executed by the plaintiff to the defendant. One of the receipts given in evidence by the defendant, indorsed on a counterpart of the lease, was in these words: "Received of Uriah Coffin, five turnpike shares, deposited with Uriah Coffin by Ralph Barber, for me, for the last

quarter's rent, due of Ralph Barber, before the assignment, agreeable to the within lease, the said shares being in the Schoharie Turnpike." On the trial the plaintiff was allowed to prove that the shares were received, not as payment, but upon the condition expressed in a letter of the defendant. The letter was dated a few days before the receipt, and stated that the plaintiff might receive the shares of Coffin, and keep them until April, when the defendant would redeem them. The shares not having been redeemed, the plaintiff was allowed to show their actual value. This parol evidence was not contradictory of the receipt. The receipt did not purport that those shares were taken as an extinguishment of the rent. It did not even express the *amount* for which they were received, nor their *value.* It seemed to recognize them as *deposited* with a third person, for the plaintiff, for the last quarter's rent. The defendant's letter and the receipt were in fact but a part of one transaction, and mutually explained each other. With this explanation the case is in perfect harmony with the other cases which have been cited.

The recent case of *Haddock* v. *Kelsey,* (3 *Barb. Sup. Court Rep.* 100,) affords a correct illustration of the principle on which a receipt may be explained. In that case, however, the two receipts simultaneously and reciprocally given by each party to the other, should be construed together, and it then becomes obvious how the plaintiff below had received $207,20, the sum for which he sued. He had not received it in cash, but in the engagement of the defendant below to pay it, when audited and allowed by the proper department at Washington. The extrinsic evidence was entirely consistent with the whole transaction.

The decisions in other states are, for the most part, in accordance with ours, allowing an explanation by parol to a receipt, in matters not inconsistent with it. Thus, when it is without date, the time when it was executed may be shown by parol. (*Troubridge* v. *Sanger,* 4 *Pick.* 179;) also to show to what demand it is applicable. (*Brooks* v. *White,* 2 *Metc.* 283.) When a *moneyed* consideration is stated in an instrument, parol

evidence is admissible to show that it was greater or less than is stated; (*Mead* v. *Steger*, 5 *Port*. 498;) and also that other considerations than those expressed passed between the parties.

But when a receipt is in the nature of a contract, it is, so far, within the general rule, and is not liable to be varied by parol evidence. (*See* 2 *Cowen & Hill's Notes*, 1439, *and the cases there cited*.) In the present case the receipts, in terms, express the manner in which the money was to be appropriated. On principle and authority they can not, in that respect be contradicted. It was competent, however, to prove a new appropriation of the money; but the proof fell short of the mark.

There is another view of this subject equally fatal to the plaintiff's right of recovery. On the merits he has no greater equity to recover back this money, than the defendant has to retain it. On the sale of the premises under the decree of foreclosure, in March, 1848, they failed to bring enough to satisfy the decree, by the sum of $284,92; which sum exceeded the amount of the two receipts and interest thereon up to that day. It is not denied that the defendant is entitled to that sum from somebody. If the money mentioned in the receipts had been applied before the decree, and the premises had sold for the same sum, there would still have been no surplus money to return to the plaintiff, and the other owners of the equity of redemption. Should the decree be now opened, the only effect would be to apply the receipts on the bond and mortgage according to their terms. If the plaintiff should now move to open the decree, the defendant might answer the motion by an offer to apply the receipts upon the decree.

The plaintiff lays stress upon the fact that Merritt, in his assignment of the bond and mortgage to the defendant, guarantied the payment. This does not increase the plaintiff's equitable title to reclaim this money. As between Merritt and the plaintiff, the equities still are that the payments made by the plaintiff should be applied on the mortgage. Good faith required that the defendant should collect his mortgage from the parties and funds primarily liable, rather than against a collateral guarantor. If the premises were worth, as is said, a much

greater sum than they brought on the sale, the plaintiff should have attended and bid them up to their full value. He and the Kelloggs, the owners of the equity of redemption, would have been entitled to the surplus money, if there were no other liens.

On the whole, we think the case has been properly disposed of by the referee, and the motion to set aside his report should be denied.

