## BILLINGS *vs.* VANDERBECK.

An accord unperformed, consisting of mutual promises, and thus having a new consideration, is binding upon the parties, and an action will lie for a breach of it.

In case of a note, or similar obligation, payable in specific articles, where nothing is to be done by the creditor but to receive performance, a tender of the articles at the time and place appointed for performance discharges the debt; the property becomes the payee's and the maker holds the same as his bailee, and at his expense and risk.

This rule prevails where the relation of debtor and creditor exists. But the doctrine does not, as a general rule, apply to cases of contracts executory on both sides.

An agreement, by which A. promises to deliver to B. certain property mentioned therein, at a specified time and place, and B. agrees to accept the property at the time and place specified and deliver certain promissory notes of A. to him, is valid; the mutual stipulations constituting a sufficient consideration. And if A. tenders performance, on his part, at the day and place, and B. fails to accept, or to perform on his part, a cause of action arises in favor of A. for such damages as he has sustained by B.'s breach of contract.

The rule of damages, in such a case, is the difference between the contract and the market price of the property at the time fixed for delivery. If there is no evidence as to the value of the property, the plaintiff can recover only nominal damages.

APPEAL from a judgment entered at a special term, upon the report of a referee. The complaint alleged that on the 19th of March, 1852, the plaintiff purchased of the defendant, at auction, a horse, a mare, a double wagon, drag and double harness, for the aggregate sum of $164.75, for which he gave to the defendant his promissory note, with two other persons as sureties, payable on the first of November, 1852, with interest. That on the sale of the mare, the defendant warranted her to be sound and eleven years old. That the plaintiff, confiding in the defendant's representations, bid her off at $47. That some time after the sale the plaintiff discovered that the mare was unsound, and more than eleven years old, and that, to recover the damages which he had sustained by reason thereof, he commenced a suit against the defendant, in a justice's court. That issue was joined in that suit, and the trial thereof adjourned until the 31st of May, 1852, when the parties appeared,

and by and between themselves settled the suit before the said justice, in the following manner, and by the following agreement, to wit: " James Billings agrees by 2 o'clock P. M. to-day, to deliver to Andrew A. Vanderbeck at the place where the said property was sold by said Vanderbeck, the chattels bought by said Billings of said Vanderbeck at the vendue in the spring. Said property to be as good, and in as good condition as when they were sold, except the loss of colt, and that the horses are poor in flesh; said Vanderbeck to deliver to Billings the note given for this property by him, and also a note of $6 held by him against Billings. Vanderbeck to pay Mr. Cook for repairing a drag, which was part of the above property, and Vanderbeck to pay the justice's cost of this suit, to wit: $4.10, being all the costs in the suit. Witness the hands of the parties. JAMES BILLINGS.

May 31st, 1852. ANDREW A. VANDERBECK."

The plaintiff further alleged that in pursuance of the above agreement, on said 31st day of May, 1852, and before 2 o'clock P. M. of that day, the plaintiff took the whole of the property specified in said agreement, and in the condition required by said agreement, to the place where the defendant, on the 19th of March, 1852, held his auction, and at which place the plaintiff purchased the property, and there delivered the same to the defendant, by publicly proclaiming that he had brought the property to that place by agreement with the defendant, to be delivered to him; that he was then ready and willing to deliver the same to the defendant, and then and there the plaintiff offered to deliver to the defendant the said property, according to his agreement, on the 31st day of May, 1852. And then and there the plaintiff publicly demanded and required the defendant to accept and receive said property, which the defendant neglected to do, and absolutely declined doing, by absenting himself from the place of delivery specified in the agreement, for the space of more than three hours next after 2 o'clock P. M. of the 31st day of May, 1852. The plaintiff further alleged that at the time last aforesaid, and during the three hours next after 2 o'clock P. M., and during the whole

of the three hours aforesaid, the plaintiff demanded and required the defendant to deliver to him the aforesaid promissory note of $164.75, dated 19th March, 1852, payable 1st of November, 1852, with interest, undersigned by Seneca Knowlton and Zenas Wright, in pursuance of the agreement, which the defendant wholly declined and neglected to do.  And the plaintiff also, at the time and place aforesaid, demanded and required the defendant to deliver to him, the said plaintiff, a note of $6 that the defendant at that time held against the plaintiff, as required by the terms of the agreement herein set out.  The plaintiff further alleged that he had kept for the defendant the property aforesaid, from the 31st of May, 1852, up to the commencement of this action, as the bailee of the defendant, at his risk and expense.  And that the defendant negotiated and transferred the said promissory note of $164.75, bearing date the 19th day of March, 1852, and payable 1st day of November, 1852, with interest, signed as herein before specified, to some third person before the same matured.  That when the said promissory note became due and was payable, the plaintiff was prosecuted thereon, and he paid to the holder of the said promissory note the full amount thereof.  The plaintiff demanded judgment against the defendant for the sum of $170.75, the amount of the two promissory notes, principal and interest, above herein set out, and also for the sum of $100 for the keeping and care of the property herein before described, from the 31st day of May, 1852, with costs.

The defendant, by his answer, denied all the allegations in the complaint; and for a further defense and answer, he alleged that he, in pursuance of the agreement between the parties mentioned in the plaintiff's complaint, herein, paid the justice, to wit, $4.10, and paid Wm. Cook for mending the drag, and immediately proceeded, with all reasonable diligence, to the place mentioned by the said contract of the parties, where the defendant's auction sale of March, 1852, was held, and arrived there in due time, according to the provisions of the said contract; that is to say, at 2 o'clock, P. M. of the 31st day of May, 1852, and there found neither the plaintiff nor the property so

Billings *v.* Vanderbeck.

agreed by the said contract to be delivered by the plaintiff to the defendant, and then and there waited a reasonable time to receive said property, and to deliver to the plaintiff the promissory notes mentioned in the said contract, and then and there publicly demanded the said property, and was ready and willing in all respects, to duly perform and fulfill, and did duly perform and fulfill his said contract on his part with the plaintiff, but that the plaintiff, to perform his said contract with the defendant, absolutely declined and refused doing, and absented himself entirely from the place where the said property was to be, by the said contract, delivered as aforesaid.

The referee found the following facts : That on the 31st of May, 1852, the plaintiff and defendant entered into the contract set forth in the complaint, and that on the same day the plaintiff had the property therein referred to, at the time and place therein mentioned, ready to be delivered to the defendant ; that the defendant was not there ready to receive, and did not receive, the same ; and that the plaintiff thereupon took it away, and after a lapse of about one year, and before the commencement of this action, sold the same and applied the proceeds to his own use ; that the notes mentioned in the said contract, given to the plaintiff by the defendant, were not transferred by him, but that they were held by him until they were paid voluntarily by the plaintiff, in November, 1852, a short time after they became payable. Upon the facts he found, as matter of law, that the plaintiff was not entitled to recover, and that the defendant was entitled to judgment against him for his costs.

*H. R. Selden*, for the plaintiff. I. The referee erred in treating the contract in this case as an accord for the satisfaction of a debt. It was a contract *of sale*, so far as the goods were concerned, and as to their title it must be governed by the rules applicable to *executory contracts for the sale of goods*. This was a special agreement embracing divers subjects. On the part of the plaintiff it was a settlement and discontinuance of his suit, and probably released his claim for damages declared for. (12 *John.* 456.) It was a sale of his horses, harness, wagon

and drag, and a binding obligation on his part to transport them to the place, and within the time appointed, and there deliver them to the defendant. On the part of the defendant it was an engagement to pay the costs of the suit, the repairs of the drag, and to deliver up two notes, *not yet due by several months.* How different this is from a *mere accord* for the satisfaction of a debt, is obvious. (*Poth. on Contracts, pt.* 7, *art.* 1, *Bost. ed. by Cushing,* 1839, *p.* 365, §§ 601, 602. *Bouvier's Dic. Accord.* 1 *Bouvier's Inst. p.* 313, § 802. 3 *id. pp.* 44 *to* 46, §§ 2478 *to* 2481.)

II. It is, however, immaterial what *name* the contract bears; it was *valid,* and having been fully performed by the plaintiff, and left unperformed by the defendant, the plaintiff was entitled to recover damages *to some extent,* if he had done nothing to *discharge* his right of action. (2 *John. Cas.* 253.) It cannot be denied that this was a valid agreement. It was *certain, mutual,* and on *good consideration.* The plaintiff has done nothing to discharge his right of action. The cases cited by the referee show that whether the agreement be considered as an accord, or as an executory *contract of sale,* not having been executed, *it could not be set up as a bar to a suit on the notes.* Of course the payment of the notes (which might have been enforced by action, notwithstanding the agreement,) could not affect the plaintiff's right of action on the agreement. The only other fact relied upon as a defense is, that prior to the commencement of this suit, the plaintiff sold the property and applied the proceeds to his own use. To this there are two answers : (1.) It is a defense not set up in the answer, and therefore the finding of the fact by the referee is nugatory. (*Harrison* v. *Nixon,* 9 *Peters,* 503. *Garland* v. *Davis,* 4 *How.* 148. *Anon.* 1 *Barb. Ch. R.* 73. *Tripp* v. *Vincent,* 3 *id.* 614. *Peacock* v. *Terry,* 9 *Geo. Rep.* 137. *Knevett* v. *Pool, Cro. Eliz.* 463. *Coulter's case,* 5 *Co.* 30, 6. *Bac. Abr. Verdict, W.*) (2.) He had a right to sell the property, and still retain his right of action. (2 *Parsons on Cont.* 483, 484, *and cases there cited. Long on Sales, p.* 448, 9, *Boston ed.* 1839.) The only effect of such sale is to entitle the purchaser

to a credit of the proceeds so far as they may go in payment of the purchase money. As there was no evidence here what the proceeds were, the defendant could only have been entitled *to a nominal* credit on that account, even if he had set it up in his pleadings.

*L. Farrar*, for the defendant. I. The contract between the plaintiff and defendant, set forth in the complaint, was executory, containing stipulations to be performed by each party, before a right of action could accrue in favor of either against the other. The defendant, at the date of the contract, had two promissory notes against the plaintiff, for the aggregate amount of $170.75, having then several months to run. By the contract the plaintiff agreed to deliver to the defendant the property mentioned therein, at a specified time and place, and the defendant agreed to accept the property at the time and place specified, and deliver the notes to the plaintiff. The substance of the contract was an undertaking on the part of the plaintiff to deliver the property, and a consent on the part of the defendant to accept it, in payment of the notes. If the defendant, by his absence, prevented the plaintiff from executing the contract on his part, the defendant may be liable for a breach of the contract, on his part, and perhaps the plaintiff might in equity be entitled to a specific performance. Yet no change of title, either to the property or notes, took place; and the plaintiff was still liable upon the notes, either in the hands of the defendant or a stranger. (*Russell* v. *Lytle*, 6 *Wend.* 390. *Hawley* v. *Foote*, 19 *id.* 516. *Daniels* v. *Hallenbeck, Id.* 408. *Brooklyn Bank* v. *De Grauw*, 23 *id.* 342. *Tilton* v. *Alcott*, 16 *Barb.* 598.) If the facts were in all respects as alleged in the complaint, the plaintiff would not be entitled to recover in this action; nor would they have constituted a bar to an action by the defendant against the plaintiff on the notes.

II. In the view of the point taken by the plaintiff's counsel, that a readiness to perform on the part of the plaintiff, at the time and place specified in the contract, vested the title to the

property in the defendant, and that the plaintiff thereupon became the defendant's bailee, this action cannot be maintained. For if the plaintiff became bailee of the property, the defendant became the plaintiff's bailee of the notes, and the plaintiff could have no action against the defendant for, or on account of the notes, without demand, refusal, &c. unless it appeared that the defendant had transferred them to an innocent holder, whereby the plaintiff had been compelled to pay them. This was, indeed, *alleged* in the complaint, but not proved. The evidence is, that the notes were not transferred by the defendant; that they remained in his hands till they matured, and that they were then voluntarily paid to the defendant by the plaintiff. The further allegation in the complaint, that the plaintiff kept the property for the defendant to the time of the commencement of the action, is also negatived by the evidence. The proof is, and the referee finds, that before the commencement of this action the plaintiff sold the property, without notice to the defendant, and converted the proceeds to his own use. The basis of the action, upon which the plaintiff's right to recover is made to rest, in the complaint, is demolished by the facts established on the trial; and granting the theory of the plaintiff's counsel to be sound, the facts entitle the defendant to judgment.

*By the Court,* T. R. STRONG, J.   It is not material to the decision of this case, whether the contract which is the basis of the action, is technically an accord for the satisfaction of a debt or claim, and insufficient for that purpose before its actual execution, or a mere ordinary contract for the sale and purchase of chattels, not belonging to the former class of contracts. In either view it is valid; the mutual stipulations constituting a sufficient consideration; and it not being obnoxious in any other respect to legal objection. An accord unperformed, consisting of mutual promises, and thus having a new consideration, is binding upon the parties, and an action will lie for a breach of it. (2 *Parsons on Cont.* 195.   *Cartright* v. *Cook,* 3 *Barn. & Adol.* 701.   *Story on Cont.* § 982.

*Com. Dig. Accord, B.* 1 *to* 4.) The plaintiff having tendered performance on his part, and the defendant having failed to perform, a cause of action thereby arose in favor of the former, against the latter, for such damages as the plaintiff had by the breach of contract sustained.

The complaint is framed upon the theory that by the tender of performance by the plaintiff the title to the chattels vested in the defendant, and the plaintiff thereafter held the chattels as the defendant's bailee, and that the plaintiff is entitled to recover the amount of the notes and for the keeping and care of the property. It is alleged in the complaint, that the largest note was transferred by the defendant before maturity, and that the plaintiff was sued upon it and paid the same to the holder, but the alleged transfer and suit are disproved. If this theory is sound, the notes were paid by the tender, and the only remedy of the plaintiff in respect to the notes—they remaining in the defendant's hands—was to refuse to pay them again, and when sued upon them to set up the payment as a defense. He could not voluntarily pay the notes to the defendant and then in any mode recover back the amount paid. (*Loomis* v. *Pulver*, 9 *John.* 244. *Egleston* v. *Knickerbacker*, 6 *Barb.* 458. *Sawyer* v. *Tappan*, 14 *N. Hamp. R.* 352. *Mitchell* v. *Sandford*, 11 *Alabama Rep.* 695.) But I am satisfied the theory, upon the facts of the case, is not tenable. It does not appear that the plaintiff, after the tender, assuming that it is a case in which he was entitled by law to elect to treat the property as belonging to the defendant, made such an election; it is not proved that he so declared at the time of the tender, or so notified the defendant subsequently; he retained the property in his possession, for aught that appears, as his own; and before the commencement of this action, without any notice to the defendant, sold the same. (2 *Kent's Com.* 504. *Sands* v. *Taylor*, 5 *John.* 396, *and cases there cited.*) The evidence of the sale was proper, although not set up in this answer, upon the question of such an election; particularly as it is alleged in the complaint, and denied in the answer, that the plaintiff had kept the property for the defendant up to the com-

Billings *v.* Vanderbeck.

mencement of the action. In case of a note, or similar obligation, payable in specific articles, where nothing is to be done by the creditor but to receive performance, a tender of the articles at the time and place appointed for performance discharges the debt; the property becomes the payee's, and the maker holds the same as his bailee, and at his expense and risk. This rule prevails where the relation of debtor and creditor exists. (2 *Kent's Com.* 508, 9. *Lamb* v. *Lathrop*, 13 *Wend.* 95.) But this doctrine does not, as a general rule, apply to cases of contracts like the present, executory on both sides. (*Shannon* v. *Comstock*, 21 *Wend.* 457. *Thompson* v. *Alger*, 12 *Metcalf*, 428. *Laird* v. *Pine*, 7 *Mees. & Wels.* 474, 478.) *Bement* v. *Smith*, (15 *Wend.* 493,) is materially unlike the present. In that case the plaintiff built a sulky for the defendant, at a price agreed upon, and tendered it to the defendant, who refused to receive and pay for it; the plaintiff then left it with a third person, after notice to the defendant that he would do so, and he was allowed to recover the price of the sulky. That was not a contract for the sale of a chattel, but for work and labor, and the decision, as appears by the opinion of the court, was controlled by reasons peculiar to like cases. The usual consequence of a default to receive and pay for property on an executory contract of sale, is a liability for the actual damages sustained; and the rule of damages is the difference between the contract and the market price of the property at the time for delivery. (*Davis* v. *Shields*, 24 *Wend.* 322. *Sedgwick on Dam.* 260.) I think that is the rule applicable to this case.

The complaint, as already stated, is not drawn with reference to this rule of damages, and it is obvious that the plaintiff at the trial did not seek to recover according to it. No evidence was given of the value of the property; whether it was worth less or more than the amount of the notes, does not appear. At most, therefore, the plaintiff could be allowed only nominal damages. But those I think he was entitled to. (*Sedgwick on Dam.* 47. 1 *Chitty's Pl.* 296, *Phil. ed. of* 1828.) When a defendant answers, the court is not limited, in granting relief, to the relief particularly demanded in the complaint, but may

grant any relief consistent with the case made by the complaint and embraced within the issue. (*Code, § 275.*) The damages implied by law from a breach of the contract are consistent with the complaint and within the issue. Were this an application for a new trial on a case, which is to some extent addressed to the discretion of the court, I should be disposed to refuse it. (*Brantingham* v. *Fay*, 1 *John. Cas.* 256. *Hyatt* v. *Wood*, 3 *John.* 239. *Feeter* v. *Whipple*, 8 *id.* 369. *Cady* v. *Fairchild*, 18 *id.* 129.) But upon appeal, founded on exceptions to the report of the referee, the exceptions must be determined according to the strict legal rights of the parties. (*Herrick* v. *Stover*, 5 *Wend.* 580. *Horton* v. *Hendershot*, 1 *Hill*, 118.)

The judgment must be reversed, and a new trial granted, with costs to abide the event.

[Monroe General Term, March 2, 1857. *T. R. Strong, Welles* and *Smith*, Justices.]