SCOTT *vs.* FRINK.

An agreement by a creditor to accept a larger sum than that secured by his mortgage, and discharge the lien *before the debt is due by the terms of the mortgage,* is founded upon a valid consideration.

The debtor having paid a part of the sum thus agreed upon, which was accepted by the creditor, under the new agreement, and having refused to pay the balance according to its terms; it was *held* that the creditor, upon tendering satisfaction of the mortgage, was entitled to maintain an action to recover such balance.

Although a subsequent valid executory agreement, while its stipulations remain unperformed, cannot be pleaded as an *accord and satisfaction,* in a legal action brought upon a sealed instrument, a *tender of performance,* by the defendant may now be interposed, as an *equitable defense,* under the provisions of the Code of Procedure; and the court having equitable jurisdiction in all cases, may decree a satisfaction of the sealed instrument. *Per* MORGAN, J.

The authorities which deny the right of a defendant to set up a valid executory agreement, in avoidance of a suit brought upon a sealed obligation, are based upon technical rules of pleading in *legal actions,* and have no application to pleadings under the Code. *Per* MORGAN, J.

APPEAL from a judgment of nonsuit. The case shows that on the eleventh day of October, 1852, one Luke Chapin executed his bond and mortgage to the plaintiff, to secure the payment of $2450, in twenty equal annual installments, with annual interest, being the purchase price of certain lands that day sold by the plaintiff to said Chapin; that the defendant purchased the lands covered by the mortgage, of the said Chapin, in 1855, and assumed to pay the said bond and mortgage; that the defendant made several payments on the bond and mortgage up to the first day of January, 1865, and the balance had seven years to run; that on the first day of January, 1865, there then being no payment due, the defendant applied to the plaintiff, and asked him how much he would take and cancel the bond and mortgage, and offered him $500 if he would cancel the mortgage and give him a satisfaction thereof; that the defendant at the time supposed there was over $500 principal yet to become due on the bond and mortgage, but it did not appear that the plaintiff sup-

posed there was that amount unpaid, although he did not know what the exact amount was; that the defendant said he would give the plaintiff $500 for it, more or less, as he wanted to get it off his farm, and that the plaintiff accepted his offer; that the defendant thereupon paid the plaintiff $250 in money and promised to pay the balance in two or three days, and then have the mortgage canceled; that he paid the plaintiff $30 more in a day or two, and after that refused to pay the balance of the $500. On the second day of December, 1865, the plaintiff tendered the defendant the bond and a satisfaction of the mortgage, and demanded the balance of the $500; but the defendant refused to accept them, or to pay the balance. This suit is brought to recover such balance.

The case also shows that there was in fact but a little over $400 to become due on the bond and mortgage. The defendant testified that when he agreed to pay the $500 for the mortgage, he supposed there was $900 due thereon, but did not know how much; that his boy had figured it up and made a mistake; that in fact he had forgotten a payment of several hundred dollars; that he should not have offered the plaintiff $500 if he had known of the mistake, and that he refused to pay the plaintiff any more, after he found out the mistake.

John Beach testified that he heard the bargain, and understood them to say that the mortgage had ten years to run; that the plaintiff said he did not know the amount due on it, and the defendant said he did not; that the defendant asked the plaintiff how much he would take and cancel and discharge the bond and mortgage; the plaintiff said he would rather have the interest than the money; that the defendant offered him $500 if he would cancel and discharge the mortgage, and said he wanted to get it off his farm; that the plaintiff told him he would accept his offer and take it; that the defendant then paid down $250, and said he would pay the balance in a few days.

Scott *v.* Frink.

At the close of the trial, the defendant moved for a nonsuit upon several grounds, which are noticed in the opinion of the court. The nonsuit was granted, and the plaintiff excepted.

*Miner & Kern,* for the appellant. It is a well settled principle of law, that the payment of a greater or less sum after a specified debt is due, in satisfaction of the debt, is not good, by way of accord and satifaction; but that doctrine is not involved in this case. (1.) The agreement in this case was based on a good and sufficient consideration. The plaintiff was the owner of the bond and mortgage, which was not due, and could not be paid until ten years had elapsed, and was under no obligation to satisfy it, or to receive the money thereon from the defendant. (2.) It was a *chose* in action, like any other chattel, subject to any agreement the parties saw fit to make, upon a sufficient consideration, even if more was received than was due on the mortgage. (3.) It is like a government bond, a security, the owner of which has a right to sell for, and the purchaser the right to give, more than its face, or the premium thereon. (4.) It was a valuable consideration that passed to the defendant, in consideration for his promise to pay the defendant $500. There were several hundred dollars due on the mortgage, drawing annual interest for ten years. The defendant had the money in his possession to pay it; he had obtained it for the purpose of clearing himself from debt. He neither wanted to hold it, and thus lose the interest, nor to invest it with the possibility of losing the principal. It was changing the time within which the mortgage was to be paid, and the amount due thereon. It was therefore a valuable and important consideration to the defendant. (5.) There is a clear distinction between this case and the class of cases holding similar contracts void for want of consideration.

One of the strongest cases is *Kellogg* v. *Olmsted,* (25 *N. Y.*

*Rep.* 189,) which holds that " a promise not to pay a certain note, then due, until six months thereafter, and then pay the same with interest, was not a sufficient consideration to extend the time of payment." SUTHERLAND, J., in the prevailing opinion, assumes that "the benefit is all received by the person obtaining the extension," and holds that " after the extension is granted, such agreement or action on the part of the debtor naturally follows, and must necessarily be implied, and therefore holds the promise to extend void for want of consideration." Judge Davies, in a well considered opinion, which is concurred in by Chief Justice Denio, dissents, and holds that the promise not to pay until the expiration of six months was a valuable consideration for the extension. It can therefore be said of this case that it goes to the very extent that the court would go, in holding a contract void for want of consideration; and it falls very far short of settling the case at bar. (6.) In *Livingston* v. *Painter,* (43 *Barb.* 270,) Justice SUTHERLAND, the same justice who wrote the prevailing opinion in 25 *New York Reports*, 189, holds that " an agreement to waive the option to declare a mortgage due at a certain day, is a good consideration for a contract, which contract he is asked to enforce in equity;" and his opinion is concurred in by Justice INGRAHAM, and is established as law in the first district.

*D. L. Atkins,* for the respondent. This was a new and independent agreement, and there must have been some new and independent consideration to support it. I. It cannot be supported upon the ground of a sale, as a sale of an instrument cannot be predicated upon a debtor's simply paying a debt secured by it, and obtaining a discharge. (*Champney* v. *Coope,* 34 *Barb.* 539. *S. C.*, 32 *N. Y. Rep.* 543.) The evidence of both parties agrees that it was a payment and satisfaction, and not a sale, which was contemplated and agreed to.

II. It cannot be supported as an agreement collateral to the bond and mortgage; as a *parol* agreement to pay a specialty cannot be enforced. (*Miller* v. *Watson*, 5 *Cowen*, 195. *Andrews* v. *Montgomery*, 19 *John.* 162.)

III. It cannot be supported upon the ground that an immediate payment of the debt, and a consequent stoppage of interest, was a good consideration. (*Kellogg* v. *Olmsted*, 25 *N. Y. Rep.* 189.) In the last cited case the creditor agreed to extend the time for the payment of a note a year, in consideration of the debtor's agreeing to keep the money and pay the interest upon it. This agreement was held to be without sufficient consideration. The court says, at page 192, "The rule of interest or value of the use of money being fixed by law, the law cannot hold the delay of payment to be either a disadvantage to the debtor, or an advantage to the creditor." There would be the same consideration in having one's money draw interest, as there would in avoiding payment of interest.

IV. It cannot be supported upon the ground that it was an advantage to the defendant to relieve his premises of the incumbrance. The law establishes the value of money and of its use, and the amount of money unpaid upon this mortgage, with the value of its use, would have satisfied the mortgage. *Kellogg* v. *Olmsted* (*supra*) establishes the principle, that delaying or anticipating the day of payment (the value of the use of money being established by law) cannot be held to be an advantage or disadvantage to either party.

V. It cannot be supported upon the ground that it was a compromise of a disputed, doubtful or unliquidated claim, as there was no dispute between the parties as to the amounts or times of the payments which had been made, and there was no doubt about its collection. Claims that are capable of being ascertained, by an arithmetical calculation, are not unliquidated. (*McDaniels* v. *Lapham*, 21 *Verm. R.* 222.) A contract under seal, before condition

broken, cannot be discharged by an executory parol agreement. (*Allen* v. *Jaquish*, 21 *Wend.* 628. *Eddy* v. *Graves*, 23 *id.* 82. *Delacroix* v. *Bulkley*, 13 *id.* 71. *Dodge* v. *Crandall*, 30 *N. Y. Rep.* 307.) This unexecuted parol discharge could not have been pleaded in bar to an action upon the bond and mortgage. (*Day* v. *Roth*, 18 *N. Y. Rep.* 448. *Littler* v. *Holland*, 3 *T. R.* 590. *Delacroix* v. *Bulkley*, 13 *Wend.* 71. *Lawrence* v. *Woods*, 4 *Bosw.* 362, 363. *Chitty on Cont.* 10th *Am. ed.* 116.) This contract cannot be supported upon the ground that it was an accord and satisfaction. The agreement had not been performed, and the defendant refused to perform before the plaintiff acted upon it. The plaintiff's subsequent tender of performance does not help him. (*Russell* v. *Lytle*, 6 *Wend.* 391. *Daniels* v. *Hallenbeck*, 19 *id.* 408. *Tilton* v. *Alcott*, 16 *Barb.* 598. *Day* v. *Roth*, 18 *N. Y. Rep.* 456. *Keeler* v. *Salisbury*, 33 *id.* 653.) An accord and satisfaction, before it can be pleaded in bar, must be full, perfect and complete. (*Mitchell* v. *Hawley*, 4 *Denio*, 414. *Frentress* v. *Markle*, 2 *Green, Iowa,* 553, *and cases before cited.*) The satisfaction was not complete in this case. Until full satisfaction was given and accepted, the plaintiff's right of action upon the bond and mortgage was not gone. (*Mitchell* v. *Hawley*, 4 *Denio*, 414. 2 *Parsons on Cont.* 6th *ed.* 688.) This executory agreement was not one that the defendant could have enforced. (*Day* v. *Roth*, 18 *N. Y. Rep.* 448. *Van Allen* v. *Jones*, 10 *Bosw.* 369, 374.) In the last cited case, brought upon a note payable *on demand*, the defendant pleaded that *at the time the note was made*, which was before due, (23 *N. Y. Rep.* 28 ; 42 *Barb.* 50.) it was agreed that he was to pay interest semi-annually, and the principal when he pleased. That subsequently it was agreed that he should pay $500 principal and interest semi-annually until the note was paid, and that at the time of making the last agreement he paid $500 upon it. This agreement was held to be wholly without consideration.

Scott *v.* Frink.

The court also held that the payment of the $500 did not make the agreement an executed one; that it could not be executed until the whole was paid. Half the amount agreed upon (the agreement being executory) turned out to have been less, instead of more, than the amount to have become due upon the bond and mortgage; a tender by the defendant of the amount would not have destroyed the lien of the ·mortgage. (*Keeler* v. *Salisbury*, 33 *N. Y. Rep.* 653. *Day* v. *Roth*, 18 *id.* 448.) The consideration is no better. or stronger because the amount offered happened to be more, instead of less, than the amount to become due. The plaintiff brings this action upon the theory that this new executory agreement was substituted in the place of, and annulled, the bond and mortgage, upon the instant the new agreement was entered into. Unless this new executory agreement had the effect of releasing both parties from the bond and mortgage, and was an agreement that could be enforced by both parties, or pleaded in bar by the defendant in an action upon the bond and mortgage, this action cannot be maintained. (*Babcock* v. *Hawkins*, 23 *Verm. R.* 561. *Goodrich* v. *Stanley*, 24 *Conn. R.* 613, *and cases before cited.* 1 *Wait's Pr.* 903.) Accord and satisfaction of a covenant, before breach, is not a good defense to an action upon the covenant, unless the discharge is under seal. (*Mitchell* v. *Hawley*, 4 *Denio*, 414, 417. *Healey* v. *Spencer*, 20 *Eng. Law and Eq.* 476. . *S. C.*, 22 *L. J.* (*N. S.*) *Exch.* 249. *Berwick* v. *Oswald*, 1 *Ellis & B.*, 72 *Com. L.* 294, 309. *Kay* v. *Waghorn*, 1 *Taunt.* 428.) This agreement was entered into by both parties upon a mere hazard, and was in effect a wager as to the amount to become due upon the bond and mortgage, and for this reason it cannot be supported.

MORGAN, J. The debt not being due at the time, the plaintiff was under no obligation to take payment in advance, and discharge the bond and mortgage, although

he might oblige himself to do so by a valid agreement with the defendant.

It appears by the case, that the defendant did agree with the plaintiff that, if he would satisfy the bond and mortgage, he would pay him $500 then, instead of paying the amount in yearly payments as the same should become due and payable by the condition of the bond and mortgage. It also appears that he was anxious to anticipate the payments and get the mortgage off from his farm. The plaintiff preferred to keep his money invested as it was, but on the defendant's offering to pay him $500 to get rid of the mortgage, the latter concluded to accept it and satisfy the mortgage.

If the matter had rested here, perhaps neither party would have been bound by the agreement, for it would have been rather a proposition on one side not definitely acted upon by the other, so as to make it a binding contract. But the parties did not stop here. The proposition of the defendant was not only accepted by the plaintiff, but acted upon. The defendant in fact induced the plaintiff to accept a payment of $250 at the time, and $30 more in a day or two after. When these payments were made, they were made and accepted under the new agreement, and in part performance thereof. If the defendant had signified his intention of having them applied as payments upon the bond and mortgage, (where they must be applied if this judgment is sustained,) the plaintiff would doubtless have refused to accept them; and it is very clear that the plaintiff did not accept them, except as part performance of the new agreement.

In my opinion, this new agreement, after it had been thus far acted upon, became binding and obligatory upon both parties. There is no difficulty in finding a consideration to support it. The authorities are clear that a creditor may accept a less sum than what is stipulated for in the contract, and discharge it, when the debt is payable at

a future day; and it seems to be equally clear that the debtor may oblige himself to pay more than is stipulated for in the contract, to induce his creditor to discharge an obligation not yet due. (1 *Smith, L. C.* 441, 444. *Chitty on Cont.* 640.)

The question here is not strictly one of accord and satisfaction. That question would perhaps come up if the defendant had tendered payment of the $500 under the new agreement, and it had been declined by the plaintiff. When the plaintiff afterwards attempted to foreclose his mortgage, the new agreement and a tender of performance under it would have raised the question—a question, however, rather of form than of substance, as I shall presently show.

I think no good lawyer will question the proposition, that if the defendant had paid the $500 under the new agreement, and the plaintiff had accepted it, the new agreement thus executed would be a good accord and satisfaction, and could be interposed as such to a suit afterwards brought by the plaintiff upon these sealed obligations.

Now when it is conceded that the new contract is founded upon a valid consideration, it must also be conceded that the parties may enforce performance of it; and although the authorities may doubt whether the new agreement can be pleaded as an accord and satisfaction, while its stipulations are unperformed, there is no difficulty in interposing such a defense, when it has been voluntarily performed by the parties, or when its performance has been enforced by the courts.

If the new agreement has been obtained by fraud, or is the result of a mutual mistake, the party injured may doubtless avoid it upon these grounds. But when it is otherwise valid, and none of these grounds are alleged or proved to avoid it, it may be enforced like any other contract. This action is brought to enforce such an agree-

ment, and the only question before the court is, whether it is a valid agreement. That depends upon two questions: 1. Whether there is a valid consideration to sustain it. 2. If there is a valid consideration to sustain it, whether it can be avoided for fraud or mistake.

I have already said enough as to the consideration. Unless it can be avoided for fraud or mistake, it must be enforced; and after it is enforced, there will remain no more technical difficulties growing out of the numerous authorities cited upon the question of dissolving sealed instruments by contracts of an inferior nature.

It would doubtless be inequitable to require the plaintiff to apply the $280 received by him under the new agreement, upon the bond and mortgage. If there was fraud or mistake which would authorize the defendant to avoid the agreement, he should have put the plaintiff in *statu quo*, by offering to rescind it. This he could not do without offering to cancel the agreement and take his money back. But, in fact, no fraud was pretended; and I am clearly of opinion that it is not a case where the court would afford relief on the ground of mutual mistake. Both parties had the means at hand to ascertain the amount unpaid upon the bond and mortgage. The defendant supposed he had got the advantage of the plaintiff. In this he was doutless mistaken, but it was one of those mistakes for which the other party was in no way responsible, and which the commonest prudence on the part of the defendant would have corrected. To entitle a party to relief in such cases, the mistake must not only be material, but must be such that he could not with reasonable diligence have obtained knowledge of the fact. (*Willard's Eq.* 70.)

To my mind this is a very plain case. The agreement is not to be set aside because the consideration is inadequate. Suppose the defendant had given his note to pay the balance over the $280, upon the payment of which

Scott *v.* Frink.

the plaintiff had agreed, on his part, to satisfy the bond and mortgage. Until the note was paid, let it be conceded that there would be no accord, and no defense to an action on the bond; but when paid, the defense would be complete. Now the defendant, in order to succeed in this case, must maintain the proposition that he would not be bound to pay the note; or, if he desired to pay it, the plaintiff would not be bound to accept payment. It is said, in some of the cases, that the plaintiff might refuse to accept performance of the substituted agreement, and thus avoid a plea of *accord* and *satisfaction.* As a technical rule of pleading this may be so in a legal action, but under the Code of Procedure a *tender of performance* would entitle the defendant to be released from the obligations of the contract; and the court sitting as a court of equity as well as of law, would have no difficulty in decreeing a satisfaction of the mortgage. Thus the defendant would have a perfect defense to a suit upon the bond and mortgage; not, indeed, by way of *accord* and *satisfaction,* but by way of counter-claim. The authorities which deny the right of a defendant to set up a *valid executory agreement* to avoid a suit upon the original obligation, are based upon technical rules of pleadings in *legal actions,* and have no application to pleadings under the Code.

Assuming that the contract is valid, either party may enforce its performance, and when performed by the defendant, either voluntarily or after recovery against him in the action, he will be at liberty to enforce a satisfaction of the mortgage.

The judgment should be reversed, and a new trial granted, costs to abide the event.

FOSTER, J., concurred.

MULLIN, J. (dissenting.) No rule of law is better settled than that an instrument under seal cannot be discharged

by a parol executory agreement. (*Delacroix* v. *Bulkley,* 13 *Wend.* 71. 2 *Cowen & Hill's Notes,* 1477.)

Such an agreement may, however, be discharged by an executed parol agreement. (2 *C. & H. Notes,* 1477, &c.)

Such an agreement operates by way of accord and satisfaction.

These propositions may therefore be stated thus: a sealed instrument cannot be discharged by an accord, merely, but may by accord with satisfaction.

It is competent, however, for parties to a contract to discharge it by substituting in its place a new parol executory agreement, founded upon a new and sufficient consideration moving between the parties. (*Billings* v. *Vanderbeck,* 23 *Barb.* 546.)

In this case the plaintiff had purchased several articles of personal property, for which he had given his note, payable in November, 1852. Amongst the property thus purchased was a mare, which the defendant warranted sound. She proved to be unsound, and the plaintiff brought an action on the warranty, before a justice. Before the trial of that action the parties entered into a new agreement, whereby, in consideration that the plaintiff would discontinue said suit, and return to the defendant the property so purchased, the defendant promised and agreed to surrender to the plaintiff his note, and pay the costs of the action.

The plaintiff alleged that he offered to return the property at the time and place agreed upon, but the defendant did not attend to receive it; and the plaintiff sued on the new agreement. The referee found that the plaintiff was at the place agreed on for the return of the property, but the defendant was not present; that the plaintiff had voluntarily paid the note he gave for the property, and had sold the said property and kept the proceeds. There was judgment for the defendant, which the general term reversed, holding the old agreement was

discharged by the new, and that the plaintiff was entitled to recover at least nominal damages.

In 2 *Pars. on Cont.* (*5th ed.* 681,) it is said the party holding the claim may agree to take a new promise of the other in satisfaction of it, or he may agree to receive a new undertaking when the same shall be executed as a satisfaction, * * * if the new promise be founded on a new consideration, and is clearly binding on the original promisor, this is a satisfaction of the former claim; otherwise it is no satisfaction. (*Babcock* v. *Hawkins,* 23 *Vt. Rep.* 561.)

In *Cortwright, adm'r of John Cook,* v. *George Cook,* (3 *Barn. & Ad.* 701,) the action was brought to recover for money paid by the plaintiff on an annuity bond to one Clay, signed by John Cook, as surety for the defendant. The plaintiff was compelled to pay the sum of £85, as such surety, and sued to recover it of the defendant, the principal debtor. The defendant gave in evidence an agreement entered into between the said John, George and one Sunderland Cook, whereby, in consideration of certain property transferred to the intestate, he assumed to pay the annuity in question. There was a verdict for the plaintiff, subject to the opinion of the court. The agreement was held to be a good accord, and bound the plaintiff.

In *Comyn's Dig.* title *"Accord,"* B 4, it is said: "So an accord with mutual promises to perform is good, though the thing be not performed at the time of action; for the party has a remedy to compel the performance."

The agreement relied on by the defendant as the substitute for the bond and mortgage, was that the defendant would pay, and the plaintiff would receive, $500 in satisfaction of the debt secured by the bond and mortgage, and that he would pay the money in two or three days. When this agreement was made, there was in fact $389.55

unpaid on the bond and mortgage, and it was payable in seven equal annual payments, from the time of making such agreement. Whatever was paid in satisfaction of the debt was paid before the defendant was obliged to pay it, and this payment was a sufficient consideration for the agreement of the plaintiff to accept the $500 in full of the indebtedness. (*Newsam* v. *Finch*, 25 *Barb.* 175.)

We have, then, a new agreement to pay $500 in two or three days, in lieu of the agreement evidenced by the bond and mortgage, and this agreement supported by a new and valid consideration.

Had the money been paid, it could not be doubted but that the transaction would have amounted to an accord and satisfaction, and an action to enforce either the bond or mortgage would have been barred.

Now if it be true that a new agreement, founded on a sufficient consideration, operated as an accord and satisfaction, then the plaintiff has the right to recover the amount unpaid upon the new agreement.

The question now is, did the plaintiff agree to accept the promise of the defendant to pay the $500 in two or three days, in satisfaction of his bond and mortgage, or was it the money that he agreed to accept, should the same be paid within the time named by the parties?

If the former, then the new agreement was a satisfaction, within the cases cited. If the latter, then he was at liberty to recant at any time before actual payment.

I cannot believe that the plaintiff intended to relinquish his lien on the bond and trust to the defendant's promise to pay the $500. (*Day* v. *Roth*, 18 *N. Y. Rep.* 456.)

If this is the correct view of the rights of the parties, then there was no satisfaction, and the bond and mortgage were left in full force.

It does not seem to be settled that a new agreement, founded on a new and sufficient consideration, will discharge an instrument under seal, if its effect is to dis-

charge an instrument not under seal. (*Tilton* v. *Alcott,* 16 *Barb.* 598. *Bailey* v. *Howen,* 3 *Bing. N. C. Rep.* 915. 1 *Wait's L. & P.* 1039.)

The judgment should be affirmed.

New trial granted.

[ONONDAGA GENERAL TERM, June 30, 1868. *Foster, Mullin* and *Morgan,* Justices.]

---

THE PEOPLE, *ex rel.* William B. Stephens, supervisor of the town of Fremont, *vs.* PETER HALSEY, treasurer of the county of Steuben.

Where private interests only, or chiefly, are concerned, and the people are only the nominal party, the relator, who is the real party applying for a mandamus, must show that he, as an individual, is entitled to the relief sought. But on an application for a mandamus to compel a county treasurer to issue his warrant to enforce the collection of a tax assessed upon debts owing to non-residents, the relator demanding the relief, not for himself, but for the public, the supervisor of the town, being an inhabitant of the town, and a tax-payer therein, is a proper person to appear as relator.

Upon the return of a town collector showing that the taxes imposed upon debts owing to non-resident creditors remain unpaid, the statute makes it the duty of the county treasurer, after the expiration of twenty days from the return, to issue his warrant to the sheriff, commanding him to make of the goods and chattels and real estate of such non-residents, the amount of such tax, &c. (*Laws* 1851, *ch.* 371, § 6.) This is a mere ministerial duty which the statute imposes upon the treasurer, and peremptorily requires him to perform upon the making of the collector's return. He has no discretion to exercise, in the matter, and is invested with no judicial functions whatever, in regard to it.

He has no power or authority to sit in judgment upon the acts of the assessors of the town, or upon those of the board of supervisors of the county. Nor can he, in answer to an application for a writ of *mandamus,* against him, for refusing to perform his duty, bring their proceedings into review for the purpose of establishing errors or mistakes in such proceedings.

But want of jurisdiction may be alleged by way of answer to any and all judicial proceedings. Hence the county treasurer may challenge the jurisdiction of any and all of these officers and tribunals to make the assessment,